**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS and PEDRO TRUJILLO,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as the Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as the Attorney General,

*Defendants*.

Case No. 1:26-cv-03072

**PLAINTIFFS' EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

STATEMENT OF FACTS .................... 2

LEGAL STANDARD .................... 5

I. Temporary Restraining Order .................... 5

II. Preliminary Injunction .................... 5

ARGUMENT .................... 6

I. Plaintiffs Have Standing. .................... 6

II. Plaintiffs are Likely to Succeed on the Merits of Its Claims. .................... 8

A. Defendants' Policy and actions exceed statutory authority and violate Congress's express commands and are arbitrary and capricious.................... 8

B. Defendants' Policy and actions are ultra vires. .................... 11

C. Defendants' Policy and actions violate separation of powers and federalism. .................... 12

III. Plaintiff Will Suffer Irreparable Harm Absent Preliminary Relief.................... 14

IV. Balance of Equities and Public Interest Favor an Injunction.................... 15

CONCLUSION .................... 17

## TABLE OF AUTHORITIES


**Case** **Page(s)**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 12

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 10

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .......... 11

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......... 8

*ConverDyn v. Moniz*,
68 F. Supp. 3d 34 (D.D.C. 2014) .......... 14

*Davis v. Pension Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) .......... 5, 6

*Dept. of Homeland Security, et al. v. League of Women Voters,*
26A308, 2026 WL 2879700 (U.S. Sept. 25, 2026) .......... Passim

*District of Columbia v. Trump*,
810 F. Supp. 3d .......... 15

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 14

*F.C.C. v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) .......... 9

*Fed. Express Corp. v. United States Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) .......... 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 6

*Grand Canyon Trust v. Pub. Serv. Co. of N.M.*,
283 F. Supp. 2d 1249 (D.N.M. 2003) .......... 10

*Ill. State Bd. of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979) ........................................................ 16

*Jafarzadeh v. Nielsen*,
321 F. Supp. 3d 19 (D.D.C. 2018)........................................................ 7

*Jolt Initiative, Inc. v. Paxton*,
821 F. Supp. 3d 706 (W.D. Tex. 2026) ........................................................ 17

*KalshiEX LLC v. Commodity Futures Trading Comm'n*,
119 F.4th 58 (D.C. Cir. 2024)........................................................ 14

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ........................................................ 8

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949) ........................................................ 11

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
780 F. Supp. 3d 135 (D.D.C. 2025)........................................................ 14

*League of Women Voters of the United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)........................................................ 14, 15, 16

*Lewis v. U.S. Parole Comm'n*,
743 F. Supp. 3d 181 (D.D.C. 2024)........................................................ 11

*Luria v. United States*,
231 U.S. 9 (1913) ........................................................ 1

*Meese v. Keene*,
481 U.S. 465 (1987) ........................................................ 7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................................ 8

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................ 5

*Nyunt v. Chairman, Broadcasting Board of Governors*,
589 F. 3d 445 (D.C. Cir. 2009)........................................................ 11

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ........................................................ 17

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 16

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .......... 10, 16

*Richardson v. Trump*,
496 F. Supp. 3d 165 (D.D.C. 2020) .......... 14, 15

*Shelley v. Am. Postal Workers Union*,
775 F. Supp. 2d 197 (D.D.C. 2011) .......... 5

*Singh v. Berger*,
56 F.4th 88 (D.C. Cir. 2022) .......... 15

*Smiley v. Holm*,
285 U.S. 355 (1932) .......... 12

*TikTok Inc. v. Trump*,
490 F. Supp. 3d 73 (D.D.C. 2020) .......... 16

*Trudeau v. F.T.C.*,
456 F.3d 178 (D.C. Cir. 2006) .......... 11

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) .......... 10

*United States v. Gradwell*,
243 U.S. 476 (1917) .......... 13

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) .......... 6, 15

*Venetian Casino Resort, L.L.C. v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) .......... 10

*Vote Forward v. DeJoy*,
490 F. Supp. 3d 110 (D.D.C. 2020) .......... 5, 14

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) .......... 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .......... 13

**Statutes**

5 U.S.C. § 704 ........ 9, 11
5 U.S.C. § 706(2) ........ 10
5 U.S.C. § 706(2)(A) ........ 8
5 U.S.C. § 706(2)(A), (C) ........ 8
5 U.S.C. § 706(2)(B) ........ 13
8 U.S.C. § 1373(c) ........ 3, 4
18 U.S.C. § 242 ........ 16
18 U.S.C. § 595 ........ 16
52 U.S.C. § 20507(c)(2)(A) ........ 1, 3, 9
52 U.S.C. §§ 20501–20511 ........ 9
Cal. Elec. Code § 2213 ........ 13
U.S. Const. art. I, § 2, cl. 1 ........ 12
U.S. Const. art. I, § 4, cl. 1 ........ 12

**Rules**

Federal Rule of Civil Procedure 65(a) ........ 5

**Regulations**

Cal. Code Regs. tit. 2, § 19061 ........ 13

## INTRODUCTION

"Under our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the Presidency." *Luria v. United States*, 231 U.S. 9, 22 (1913). Despite this, Defendant Blanche and others, through their October 13, 2026, demand letter (Ex. A), seek to interfere with the rights of naturalized citizens to vote in California by coercing state election officials into a slapdash removal of voters from voter rolls based on a dubiously secure list of purported non-citizens within 48 hours or face legal action (herein the "Alleged Non-Citizen Removal Policy" or the "Policy").[1] Defendants' threat comes a week after California has sent ballots to voters. No one other than Defendants knows who generated the list of non-citizens they are attempting to force California officials to use, what databases were used to flag these alleged non-citizens, and who manufactured the list. Based on lists of non-citizens that Defendants have sent to other states, which were so flawed that ***none*** of the persons flagged were non-citizens, the California list is likely similarly flawed.

Defendants' actions are plainly illegal. Defendants are using the power of the federal government to effectively remove voters from voter rolls by threat and intimidation outside of their legal authority in violation of the Administrative Procedure Act ("APA"). Furthermore, Defendants' coercion of California election officials and county administrators in Los Angeles County, California to violate the National Voter Registration Act ("NVRA") by forcing on them a "program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days prior to a federal election (52 U.S.C. § 20507(c)(2)(A)) violates the APA and is an *ultra vires* action this Court must enjoin.

---

[1] While the October 13, 2026, letter from Defendants directs the state of California to "segregate not cancel" the vote by mail ballots of suspected non-citizens, the effect is the same. With the election less than three weeks away, failure to send a vote by mail ballot or segregate any ballot received by suspected non-citizens is tantamount to removing these voters from the voter rolls.

Plaintiffs the Coalition for Humane Immigrant Rights ("CHIRLA") and Pedro Trujillo (herein "Plaintiffs") ask this Court to issue a Temporary Restraining Order against Defendants and a preliminary injunction enjoining Defendants from utilizing such alleged non-citizen voter lists detailed in their October 13, 2026, letter and preventing Defendant Blanche from using his officers and agents to segregate California voters' ballots. Strictly in the alternative, Defendants should be enjoined from forcing officials to employ their lists without the local officials permitting a time period wherein voters can inquire whether they are on the list and provide information necessary under law to satisfy the local registrar that their voter registration is lawful and their ballot should not be segregated.

**STATEMENT OF FACTS**

In 2025 DHS modified SAVE to incorporate Social Security Administration records, including Social Security numbers, and to permit bulk searches as part of the Trump Administration's attempt to thwart what they characterized as rampant non-citizen voting. *See Dept. of Homeland Security, et al. v. League of Women Voters,* 26A308, 2026 WL 2879700, at *1 (U.S. Sept. 25, 2026) (per curiam). Continuing with this focus on alleged non-citizen voting, on July 10, 2026, DHS issued a press release stating that Federal Emergency Management Agency ("FEMA") grant recipients must use SAVE to verify the citizenship of their state voter rolls, and that FEMA would withhold 20 percent of a recipient's Homeland Security Grant Program award until the recipient submits proof of compliance. ECF No. 1, at ¶¶ 42–44. On July 17, 2026, Secretary Mullin stated publicly that 190,832 non-citizens were registered to vote in California and sent a letter to the California Secretary of State asking the State to work with DHS to identify them by July 30, 2026. DHS did not disclose its methodology. Secretary Mullin also stated that states that did not run their voter lists through DHS databases would not receive federal grants and that individuals who attempted to vote unlawfully would be charged. *Id.* at ¶¶ 49, 51–53.

On August 17, 2026, the Assistant Attorney General for Civil Rights stated that the Department of Justice is reviewing state voter rolls for potential ineligible registrations and referring suspected cases of non-citizens on voter rolls for prosecution. DHS subsequently announced an HSI voter fraud "surge" initiative in nine states, including California. *Id.* at ¶¶ 55–56. DHS has since acknowledged that its non-citizen figures are incorrect. *See* Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. TIMES (Sept. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

Since the filing of this lawsuit, a federal whistleblower has alleged that, at the direction of DHS and U.S. Citizen and Immigration Services ("USCIS") leadership, staff in the USCIS Fraud Detection and National Security Directorate were directed, as part of an "Unlawful Voter Initiative," to use sensitive personally identifiable information to access state voter registration websites to verify individuals' immigration and voter registration statuses, and to create law enforcement records on individuals, including U.S. citizens, for possible referral to HSI. *See* Benjamin Swasey & Jude Joffe-Block, *Federal agents may have broken state laws in voter fraud hunt, whistleblower claims*, NPR (Sept. 14, 2026), https://www.npr.org/2026/09/14/nx-s1-5968892/dhs-whistleblower-voter-fraud.

On September 25, 2026, in a related case before this Court, the Supreme Court issued an opinion granting a stay of an injunction this court issued against the SAVE program. *See League of Women Voters,* 26A308, 2026 WL 2879700, at *3. In granting the stay, the Supreme Court cited to the 90-day NVRA provision and noted that "that moratorium limits the potential impact of staying the District Court's order in this case." *Id.* (citing 52 U.S.C. § 20507(c)(2)(A)). On the merits, the Supreme Court preliminarily concluded that 8 U.S.C. § 1373(c) "requires DHS to

respond to inquiries from state and local agencies 'seeking to verify or ascertain the citizenship or immigration status of any individual.'" *Id.* The Supreme Court did not authorize the mandatory voter purges DOJ is insisting on from California officials but instead noted that in that case, the voter plaintiff lived in "a State (Louisiana) that used the modified SAVE program." *Id.* at *2. What DOJ is attempting to do here is go one step further and force a state to use SAVE under threat of prosecution.

On October 13, 2026, DOJ, helmed by Defendant Blanche, gave "California authorities 48 hours to review a list of alleged noncitizen voters or face legal action." Andrew Goudsward & Jacob Bogage, *Trump's DOJ threatens to block California voters in explosive pre-election showdown*, THE INDEPENDENT (Oct. 14, 2026), https://www.the-independent.com/news/world/americas/us-politics/justice-department-california-noncitizen-voters-b3066489.html. The demand, attached as Exhibit A, which was authored by Deputy Attorney General R. Trent McCotter, stated that federal officials provided to Los Angeles County a thumb-drive containing the names of persons that the federal government believes are non-citizens who were issued a mail ballot. *Id.* They further demanded that any person who is on the DOJ list must have their ballot either withheld or segregated if already returned and not counted. *Id.* The threats of prosecution outlined in the Complaint remain in place. The letter threatens additional action if the California officials do not acquiesce to the DOJ's request by "noon EST" tomorrow, October 15, 2026. *See* Ex. A at 2.

CHIRLA is a membership organization made up, in part, of naturalized U.S. citizens. Plaintiff Pedro Trujillo is one such member who is a U.S. citizen and is lawfully registered to vote in Los Angeles County, California. CHIRLA has identified and continues to identify scores of members and clients who are likely to have been improperly flagged by Defendants as non-citizen

voters. These voters now "need to take . . . affirmative steps to avoid risk of harm . . ." to their voter registration, mail ballot and right to vote in general. *See League of Women Voters,* 26A308, 2026 WL 2879700, at *2. Because of this, the individual plaintiff has standing to seek this relief and CHIRLA has standing on behalf of its members because it now must spend time, money and effort to prevent its members from being illegally removed or segregated in the voter rolls, including advocacy and information sharing with registrars who, unlike Defendants, are lawfully in charge of their members' voter registrations.

## LEGAL STANDARD

### I. Temporary Restraining Order

"The court may issue a temporary restraining order ("TRO") when a movant is faced with the possibility that irreparable injury will occur even before the hearing for a preliminary injunction required by Federal Rule of Civil Procedure 65(a) can be held." *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 202 (D.D.C. 2011). The factors to evaluate a TRO request are identical to those for a preliminary injunction. *Id.*

### II. Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish four factors: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities supports the plaintiff; and (4) that issuance of an injunction is in the public interest. *See Vote Forward v. DeJoy*, 490 F. Supp. 3d 110, 117-18 (D.D.C. 2020). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 418 (2009). Within the D.C. Circuit, the four factors are evaluated on a "sliding scale." *Davis v. Pension Ben. Guar. Corp.,* 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). "If the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing

on another factor." *Id.* Additionally, "[a] party thus is not required to prove [its] case in full at a preliminary-injunction hearing." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

**ARGUMENT**

**I. Plaintiffs Have Standing.**

Plaintiffs have standing. To establish Article III standing, a plaintiff must show (1) that they suffer an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is likely caused by the defendant; and (3) that the injury would be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000).

Here, Organizational Plaintiff CHIRLA suffers a concrete and particularized injury because it is likely its members and clients, consisting of scores of naturalized citizens, have been placed on the list of purported non-citizens that Defendants have provided to Los Angeles County and California election officials. Decl. of CHIRLA at ¶ 5. CHIRLA's members, given their status as recently naturalized citizens fear that they will be unable to confirm their citizenship in time for their ballots to count if the Defendants' Policy is permitted to move forward. *Id.* at ¶ 6. Whether or not they have, the demand made by DOJ requires CHIRLA and these persons to spend time, money and effort to take additional steps to ensure they are not on the list and, if they are, take steps to ensure their voting rights are not impeded. *Id.* at ¶ 6-8.

The systems utilized by Defendants have proven to be notoriously inaccurate, increasing the risk that members of Organizational Plaintiff will have their ballots undelivered or uncounted under the Policy. Further, these most recent threats by Defendants, compounded with countless other threats and recent on the ground actions by the federal government, directly impact CHIRLA members, serving as constant intimidation of their exercise of their legally protected right to vote,

causing them fear and emotional distress in their personal safety voting and can chill members' election participation. *Id.* at ¶ 8.

Similarly, Plaintiff Trujillo also faces harm. Trujillo is a registered voter within Los Angeles County and was recently naturalized in 2021. Decl. of Trujillo ¶ 2, 4. Plaintiff Trujillo plans to vote in the upcoming general election, however, given the proven inaccuracy of Defendants alleged non-citizen lists, is at heavy risk of being placed on the list of purported noncitizens. Plaintiff Trujillo also suffers the harm of fear and emotional distress that he will be removed from the voter lists or might otherwise be persecuted or prosecuted for simply exercising his legal right to vote. *Id.* at ¶ 7-8. Trujillo must also now take affirmative steps and possibly spend money, in addition to time and effort, to ensure that Defendants' actions do not harm his ability to vote this year. *Id.* at ¶ 9. "'Such a "need to take . . . affirmative steps to avoid risk of harm . . . constitutes a cognizable injury' supporting standing." *League of Women Voters,* 26A308, 2026 WL 2879700, at *2 (citing *Meese v. Keene*, 481 U.S. 465, 475 (1987)). Additionally, this Court has recognized that plaintiffs have standing to bring separation of powers claims when the violation of separation of powers causes an injury to Plaintiffs' interest, as is the case here. *See Jafarzadeh v. Nielsen,* 321 F. Supp. 3d 19, 35 (D.D.C. 2018).

Undoubtedly, the interference with Plaintiff Trujillo's right to vote and Plaintiff CHIRLA's members' right to vote is caused by Defendants' actions, most recently through the threats contained in the October 13, 2026, letter. Any injury would be redressed by an order from this Court enjoining Defendants' actions. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury.").

## II. Plaintiff is Likely to Succeed on the Merits of Its Claims.

Plaintiff is likely to prevail on its claims that Defendants' Alleged Non-Citizen Removal Policy violates the Administrative Procedure Act and the United States Constitution.

### A. Defendants' Policy and actions exceed statutory authority and violate Congress's express commands and are arbitrary and capricious.

Plaintiff is likely to succeed on its claims that Defendants' Alleged Non-Citizen Removal Policy of coercing California officials to effectively remove voters Defendants have flagged by withholding ballots from voters Defendants believe are suspected non-citizens and/or order California election officials to segregate and not count ballots of alleged non-citizen voters exceeds statutory authority and violates federal law.

A federal agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Its "power to act and how [it is] to act is authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). The APA requires this Court to "hold unlawful and set aside" final agency action that is "in excess of statutory jurisdiction, authority, or limitations," or "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C). Similarly, reviewing courts are instructed to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).

Defendants' actions are well beyond anything Congress has authorized, fall squarely within what Congress has forbidden, and are final agency actions the APA thus requires this Court to set aside.

*First*, no statute authorizes Defendant Blanche through the Department of Justice to coerce California election officials to remove voters from voter rolls, withhold ballots of lawfully registered voters, and/or segregate ballots from voters Defendants allege are non-citizens. The Supreme Court's order on a stay in the *League of Women Voters* case confirms a similar program was only lawful if a state voluntarily sought to participate. *League of Women Voters,* 26A308, 2026 WL 2879700, at *3. No statute gives any authority to the DOJ to demand and/or force the removal of voters or withholding of ballots from lawfully registered voters. Moreover, no statute authorizes DHS to generate lists of registered voters it considers non-citizens and to direct, require, or induce States to use those lists to remove voters from their voter rolls. Congress has comprehensively regulated voter list maintenance for federal elections in the NVRA, 52 U.S.C. §§ 20501–20511, and has left voter registration and list maintenance to state and local officials.

*Second*, the NVRA prohibits Defendants' request to Los Angeles County and California election officials. Agency action "not in accordance with law" means action contrary to "*any* law, [] not merely those laws that the agency itself is charged with administering." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003). DOJ's letter demands, under federal penalties, that California election officials violate the NVRA moratorium. *See* 52 U.S.C. § 20507(c)(2)(A). Defendants' actions exceed limits Congress placed on them. Thus, Defendants' Alleged Non-Citizen Removal Policy violates the APA based on conflict with the NVRA.

*Third,* Defendants' generation and transmission of their non-citizen list to the Secretary of State and Los Angeles County officials for the purpose of removing voters and/or effectively preventing lawfully registered voters from voting by placing additional burdens on these voters to provide proof of citizenship within the 90-day period before the November 3, 2026, General Election, are final agency action within the meaning of 5 U.S.C. § 704. They mark the

consummation of Defendants' decision-making process and are actions from which legal consequences flow. Agency action is final when it "mark[s] the consummation of the agency's decisionmaking process" and is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). The inquiry is "pragmatic," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016), and an unwritten policy reflected in agency statements and practice is reviewable, *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015). Indeed, "[a] contrary rule 'would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing.'" *See R.I.L-R*, 80 F. Supp. 3d at 184 (quoting *Grand Canyon Trust v. Pub. Serv. Co. of N.M.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003)). Plaintiff challenges two particularized agency actions: Defendants' policy authorizing their coercion of state and local officials to violate the NVRA by removing qualified voters from the rolls or segregating voters' ballots who the Defendants allege are non-citizens and the execution of said Policy in California where Plaintiff Trujillo votes and where Plaintiff CHIRLA's members are voters. Defendants' Policy and execution thereof are independently final agency action that violate the APA and must be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2).

Finally, Defendants' actions are arbitrary and capricious in their timing and execution. Defendants' October 13, 2026, letter sent on the eve of the election demonstrates an arbitrary, even bad faith, attempt on their part to interfere with California elections. Despite knowing since at least July 16, 2026, of alleged "numerous noncitizens registered to vote" in California, Defendants, by their own admission, did not supply state or local elections officials with further information until yesterday, less than three weeks before the election, and demanded action be taken within 48 hours

of receipt of the letter. See Ex. A. Such action is plainly arbitrary and capricious. Plaintiffs are therefore likely to succeed on the merits of their APA claims.

**B. Defendants' Policy and actions are ultra vires.**

Defendants' Policy and actions are ultra vires for the same reasons. Independent of the APA, federal courts have long had equitable power to enjoin federal officers "acting in excess of [their] authority or under authority not validly conferred." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 (1949); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996). Sovereign immunity is no bar. "The APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Reich*, 74 F.3d at 1328. Nor does ultra vires review require final agency action; that requirement comes from § 704 of the APA and limits only claims brought under the APA itself. *See Trudeau v. F.T.C.*, 456 F.3d 178, 188-90 (D.C. Cir. 2006); *see also Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 193 (D.D.C. 2024) ("*Ultra vires* review is available to challenge both agency action and inaction.").

In this Circuit, ultra vires review lies where an agency acts "'in excess of its delegated powers and contrary to a specific prohibition' in the law." *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (quoting *Nyunt v. Chairman, Broadcasting Board of Governors,* 589 F. 3d 445, 449 (D.C. Cir. 2009)). The doctrine is reserved for "extreme" agency error that violates "some specific command of a statute" and so "warrant[s] the immediate intervention of an equity court." *Id.* at 764 (citations omitted).

That doctrine is properly applied here. Federal law expressly bars systematic removal of voters from voter rolls this close to an election. Defendants themselves had admitted so. Opposition to Application for Stay, at 38, *League of Women Voters,* 26A308, 2026 WL 2879700. The United States Supreme Court agreed. *See League of Women Voters,* 26A308, 2026 WL

2879700, at *3. [2] ("To be sure, that moratorium [NVRA] limits the potential impact of staying the District Court's order in this case.") While individualized inquiries are allowed if a state voluntarily participates, that is not the case here. Defendants sent a list of suspected non-citizen voters and ordered state and local election officials to take action to interfere with their ability to vote. *Id.*

Adopting and executing a policy that violates federal law is as extreme and plain an excess of delegated power as there is. Defendants' actions are thus ultra vires and warrant this Court's immediate equitable intervention.

**C. Defendants' Policy and actions violate separation of powers and federalism.**

Defendants' actions violate multiple provisions of the U.S. Constitution that assign authority over federal elections to the States and Congress, not to the Executive Branch.

The Elections Clause commits the "Times, Places and Manner of holding Elections for Senators and Representatives" to the States, subject to alteration only by Congress. U.S. Const. art. I, § 4, cl. 1; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013). That grant is "comprehensive," reaching "supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers," and every other "procedure and safeguard[]" needed to conduct an election. *Smiley v. Holm*, 285 U.S. 355, 366 (1932). The Voter Qualifications Clause and the Seventeenth Amendment likewise commit the qualifications of federal voters to the States. U.S. Const. art. I, § 2, cl. 1; *id.* amend. XVII; *Inter Tribal Council*, 570 U.S. at 16-17. The Executive Branch appears nowhere in this allocation. It has no independent constitutional authority over the conduct of elections or the eligibility of voters

[2] While the U.S. Supreme Court noted it will consider the scope of the NVRA in another matter, it did not do so in the suit challenging DHS'use of SAVE and rather conceded the 90-day limitations imposed by the NVRA. *Id*. at n. 2.

and may act in this domain only as Congress directs. When Congress has chosen to regulate federal elections, "it has done so by positive and clear statutes," and it has otherwise "le[ft] the conduct of the election of its members to state laws, administered by state officers." *United States v. Gradwell*, 243 U.S. 476, 485 (1917).

California has exercised its constitutional authority over federal elections. It has assigned the administration of state and federal elections to California county officials. California also has requirements on when a voter can be removed from the voter roll and/or when their ballot must be segregated. *See* Cal. Elec. Code § 2213; Cal. Code Regs. tit. 2, § 19061. The state's process for challenging the registration of a voter must be honored by the federal defendants under the 10th Amendment to the U.S. Constitution. Federal officials may not commandeer state officials in this manner.

No source of law supports Defendants' actions or Policy. The Executive Branch's power "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The Constitution gives the Executive no role in administering elections, and Congress, far from authorizing the purging of voters within 90 days of a federal election. Defendants are therefore acting against the "express [and] implied will of Congress" in a field the Constitution reserves to the States and Congress—*i.e.*, where executive power is "at its lowest ebb." *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring).

Defendants' Policy therefore violates the separation of powers and federalism limits imposed by the Elections Clause, the Voter Qualifications Clause, and the Seventeenth Amendment. And because Defendants' actions are contrary to the Constitution, they likewise violate Section 706(2)(B) of the APA. For these reasons, Defendants' actions must be declared unconstitutional, set aside, and enjoined.

## III. Plaintiff Will Suffer Irreparable Harm Absent Preliminary Relief.

Plaintiff will suffer irreparable harm if Defendant Blanche is permitted to coercively and forcibly remove voters from the voter rolls within this 90-day period. "[A] litigant seeking a preliminary injunction must satisfy 'a high standard' for irreparable injury." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 (D.D.C. 2014). "The movant must demonstrate that it faces an injury that is 'both certain and great; it must be actual and not theoretical,' and of a nature 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Vote Forward*, 490 F. Supp. 3d at 129 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiffs easily satisfy this high bar. The Alleged Non-Citizen Removal Policy forces state officials to violate federal and state law, violating Plaintiff Trujillo and Plaintiff CHIRLA's members' right to vote. Courts have recognized that the existence of a constitutional violation constitutes proof of irreparable harm. *See Elrod v. Burns*, 427 U.S. 347 (1976). Restrictions on the fundamental right to vote are a recognized irreparable injury. *Richardson v. Trump*, 496 F. Supp. 3d 165, 187 (D.D.C. 2020). Additionally, the harm faced by Plaintiffs is irreparable because the Alleged Non-Citizen Removal Policy interferes with the administration of the 2026 election, and once voting passes, there can be "no do-over and no redress." *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 200–01 (D.D.C. 2025) (quoting *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016)) (finding that plaintiffs showed a strong likelihood that an executive order that required changes to be made to the federal voter registration form would cause irreparable harm to plaintiffs because it would increase voter confusion and interfere with ongoing voter registration efforts).

Moreover, Defendants' Policy directly interferes with the electoral process and risks distorting the fundamental right to the franchise. *See KalshiEX LLC v. Commodity Futures Trading*

*Comm'n*, 119 F.4th 58, 66 (D.C. Cir. 2024) ("Ensuring the integrity of elections and avoiding improper interference and misinformation are undoubtedly paramount public interests, and a substantiated risk of distorting the electoral process would amount to irreparable harm."). As such, this factor strongly supports granting preliminary relief.

**IV. Balance of Equities and Public Interest Favor an Injunction.**

The balance of the equities and public interest favor an injunction. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As stated above, the balance of the equities and public interest factors "merge when, as here, the Government is the opposing party." *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022).

In *Richardson v. Trump*, 496 F. Supp. 3d 165, 188-89 (D.D.C. 2020), the district court found that the balance of the equities favored plaintiffs who challenged restrictions on mail voting by the executive branch and USPS because "[t]he public interest ... favors permitting as many qualified voters to vote as possible." *Id.* (internal quotations omitted). In *District of Columbia v. Trump*, 810 F. Supp. 3d at 64, the district court found that the balance of the equities and the public interest favored the District of Columbia and granted an injunction to end the unlawful action of the National Guard deployment by the Department of Defense and the President. In doing so, the court recognized that "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.*

Here, the public has a strong interest in allowing a safe, unimpeded exercise of the right to vote and ensuring that as many qualified voters are able to vote as possible. *See* Newby, 838 F.3d at 12 (noting the public "has a strong interest in exercising the fundamental political right to vote… a right that is preservative of all rights…and of the most fundamental significance under our constitutional structure.") (cleaned up) (internal citations omitted).

Further, weighing in Plaintiffs' favor is Defendants' direct violation of numerous federal laws that prohibit interference with or actions affecting the nomination or the election of federal offices by employees of the federal government and/or depriving a citizen of a constitutional right. *See* 18 U.S.C. § 595; 18 U.S.C. § 242. "There is generally no public interest in the perpetuation of unlawful agency action." *Newby*, 838 F.3d at 12.

Defendants cannot identify any equitable reason why the Alleged Non-Citizen Removal Policy should continue *now* after California has already mailed ballots to voters and the election is underway. Congress has not delegated to Defendants any purpose in policing voter qualifications and election administration. Instead, Congress has directed such systematic activities should not take place within 90 days of the election. Nothing in federal law provides Defendants with the authority to inject themselves into the mechanics of an ongoing election. And even if they could, Defendants would suffer no harm if the Alleged Non-Citizen Removal Policy was temporarily enjoined because "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.'" *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 (D.D.C. 2020) (quoting *R.I.L-R*, 80 F. Supp. 3d at 191).

The equities and public interest also favor a temporary restraining order and/or injunctive relief because Defendants seek to disrupt an ongoing election and the Alleged Non-Citizen Removal Policy will result in citizens being disenfranchised during *this* election. There is a "strong interest in exercising the fundamental political right to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (internal quotation marks omitted). Defendants' actions implicate the right to vote, which is "of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). Plaintiffs have a stronger interest in their right to vote than Defendants do in unlawfully coercing California state officials into

segregating ballots of qualified voters and effectively removing voters from the voter roll. *See Jolt Initiative, Inc. v. Paxton*, 821 F. Supp. 3d 706, 727 (W.D. Tex. 2026). Because "[t]he public interest therefore favors permitting as many qualified voters to vote as possible," any federal action that jeopardizes the right to vote, including the ability of a local government to fairly administer elections, is against the public interest and disfavors Defendants. *See Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant its Motion and issue a temporary restraining order and preliminary injunction against Defendants.

Dated: October 15, 2026

Respectfully Submitted,

*/s/ Chad W. Dunn*
Chad W. Dunn (DC Bar No. 987454)
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org

Xavier Becerra**
Senior Advisor and Voting Rights Counsel
108 W. 2nd Street, #310
Los Angeles, CA 90012
Telephone: 310-924-9310
Scheduling.becerra@gmail.com

*Licensed in the State of California, *Motion to appear pro hac vice* granted

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (D.C. Bar No. 1720816)
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone:310-279-6025
cbergquist@chirla.org

Adam Reese**

2533 West Third Street, Suite 101 Los Angeles, CA 90057
Tel: 213-353-1333
areese@chirla.org
**Licensed in the State of California, *Motion to appear pro hac vice*, forthcoming

**CERTIFICATE OF SERVICE**

I, Chad Dunn, hereby certify that on this 15th day of October 2026, I electronically filed foregoing document with Clerk of the Court using the ECF system. Notice of such filing will be sent to all attorneys of record in this matter and counsel for Defendants who have yet to file formal notices of appearance via email at Keri.L.Berman@usdoj.gov, Andrew.Warden@usdoj.gov.

_/s/ Chad Dunn_____________
Chad Dunn

**CERTIFICATE OF CONFERENCE**

Yesterday (October 14, 2026) at 1:00 EST, the undersigned Plaintiffs' counsel Chad Dunn, Bernadette Reyes and Carl Bergquist participated in a telephone conference with Keri Berman and Andrew Warden from the U.S. Department of Justice who represent Defendants in this case. The meeting was triggered by Plaintiffs' counsel's letter attached as Exhibit B. An agreement could not be reached on the relief requested by Plaintiffs and defense counsel would not commit to not take action in conformity with their October 13, 2026 demand letter at or after noon EST today/October 15, 2026. Contemporaneously herewith, the undersigned has provided a copy of the complaint, return of service and today's filings, by email to counsel.

__*/s/ Chad Dunn*____________
Chad Dunn