**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS and PEDRO TRUJILLO,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as the Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as the Attorney General,

*Defendants*.

Case No. 1:26-cv-03072-JEB

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPERSEDING EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
ARGUMENT ........ 2
I. Plaintiffs Have Standing ........ 2
A. Individual Plaintiff Pedro Trujillo Has Standing ........ 2
B. CHIRLA Has Associational Standing. ........ 3
C. CHIRLA Has Organizational Standing. ........ 7
D. There is Sufficient Connection in the Complaint to Relief Requested. ........ 9
II. Plaintiffs are Likely to Succeed on the Merits of Their Claims. ........ 9
A. Defendants' Policy and actions violate the Constitution. ........ 13
B. Defendants' Policy is Ultra Vires. ........ 13
C. Defendants' Policy and actions violate the APA. ........ 14
i. Defendants' Policy is a final agency action. ........ 14
ii. Defendants' Policy is arbitrary and capricious. ........ 16
iii. Defendants' Policy exceeds statutory jurisdiction and violates the NVRA. ........ 18
III. Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief. ........ 20
IV. Balance of Equities and Public Interest Favor an Injunction. ........ 22
CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AFL-CIO v. DOL*,
836 F. Supp. 3d 137 (2d Cir. 2016) ........ 17, 18
*Allen v. Wright*,
468 U.S. 737 (1984) ........ 11
*Aracely, R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) ........ 19
*Arcia v. Fla. Sec'y of State*,
772 F. 3d 1335 (11th Cir. 2014) ........ 23
*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ........ 14
*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ........ 23
*Bird v. Barr*,
No. 19-CV-1581, 2020 WL 4219784 (D.D.C. July 23, 2020) ........ 13
*California v. Texas*,
593 U.S. 659 (2021) ........ 10
*Carrington v. Rash*,
380 U.S. 89 (1965) ........ 16
*Chamber of Com. Of U.S. v. Whiting*,
563 U.S. 582 (2011) ........ 15
*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........ 10
*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ........ 15
*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019) ........ 15
*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*,
815 F. Supp. 3d 1 (D.D.C. 2025) ........ 19
*Ctr. for Taxpayer Rts. v. IRS.*,
No, 26-5006, 2026 WL 2635380 (D.C. Cir. Sep. 8, 2026) ........ 11, 12
*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 12
*Dept. of Homeland Sec., et al. v. League of Women Voters,*
26A308, 2026 WL 2879700 (U.S. Sept. 25, 2026) ........ 16, 12, 22, 23
*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........ 21
*RNC v. DNC*,
589 U.S. 423 (2020) ........ 28
*DSCC v. Trump*,
834 F. Supp. 3d 19 (D.D.C. 2026) ........ 24, 25
*DSCC v. Trump*,
No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) ........ 28
*DSCC v. Trump,*
No. 26-CV-01114, 2026 WL 2681471, at *11 (D.D.C. Sept. 13, 2026) ........ 28

*Ex parte Siebold*,
100 U.S. 371 (1880) .......... 14
*F.C.C. v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) .......... 24
*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) .......... 11
*Gade v. Nat'l Solid Wastes Mgmt. Ass'n.*,
505 U.S. 88 (1992) .......... 15
*Gordon Coll. v. United States Small Bus. Admin.*,
No. CV 23-614, 2024 WL 3471261 (D.D.C. July 18, 2024) .......... 22
*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .......... 16
*Henderson v. United States*,
237 F.2d 169 (5th Cir. 1956) .......... 16
*KalshiEX LLC v. Commodity Futures Trading Comm'n*,
119 F.4th 58 (D.C. Cir. 2024) .......... 25
*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) .......... 26
*League of Women Voters of United States v. Newby,*
838 F.3d 1, 12 (D.C. Cir. 2016) .......... 27
*League of Women Voters of Mass. v. Trump*,
1:26-CV-11549-IT, 2026 WL 2620871 (D. Mass. Sept. 4, 2026) .......... 27
*Lopez v. Monterey County*,
525 U.S. 266 (1999) .......... 26
*LULAC v. Exec. Office of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) .......... 27
*McHenry Cnty. v. Kwame Raoul*,
44 F.4th 581 (7th Cir. 2022) .......... 16
*Merrill v, Milligan*,
142 S.Ct. 879 (2022) .......... 28
*Mi Familia Vota v. Fontes*,
129 F. 4th 691 (9th Cir. 2025) .......... 23
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*.,
463 U.S. 29 (1983) .......... 21
*Oregon v. Mitchell*,
400 U.S. 112 (1970) .......... 16
*People Not Politicians v. Onder*,
No. 26A388, 2026 WL 2883222 (U.S. Sept. 25, 2026) .......... 6, 28
*Presley v. Etowah Cnty. Comm'n*,
502 U.S. 491 (1992) .......... 26
*Printz v. United States*,
521 U.S. 898 (1997) .......... 16
*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 6, 28
*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .......... 27

*Shelby County v. Holder*,
570 U.S. 529 (2013) ........................................ 16, 17, 26
*Singh v. Berger*,
56 F.4th 88 (D.C. Cir. 2022)........................................ 26
*Smiley v. Holm*,
285 U.S. 355 (1932) ........................................ 14
*Sustainability Inst. v. Trump*,
165 F.4th 817 (4th Cir. 2026) ........................................ 17
*TikTok Inc. v. Trump*,
490 F. Supp. 3d 73 (D.D.C. 2020)........................................ 27
*United States Postal Serv. v. California*,
No. 26A305, 2026 WL 2687160 (U.S. Sept. 14, 2026) ........................................ 20
*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ........................................ 16
*United States v. California*,
No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) ........................................ 9, 15
*United States v. Gradwell*,
243 U.S. 476 (1917) ........................................ 14
*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ........................................ 26
*Venetian Casino Resort LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008)........................................ 19
*Virginia Coal. for Immigrant Rts. v. Beals*,
803 F. Supp. 3d 454 (E.D. Va. 2025) ........................................ 23
*Watson v. Republican National Committee*,
609 U.S. 672 (2026) ........................................ 15

**Statutes**

18 U.S.C. § 611........................................ 9, 14, 15, 22, 26
52 U.S.C. § 20501........................................ 14
52 U.S.C. § 20507(c)(2)........................................ 23, 5, 24
52 U.S.C. § 20508(b)(2) ........................................ 22
52 U.S.C. § 20901........................................ 14
52 U.S.C. § 21083(b)(2) ........................................ 22
Cal. Elec. Code. § 15016 ........................................ 9

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1........................................ 14

**Regulations**

Cal. Code Regs. Tit. 2, § 20879........................................

**INTRODUCTION**

Defendants' actions of employing "third-party" and likely flawed data from commercial databases, using said data to compile lists of alleged non-citizen voters, and issuing commands to every California county during an *ongoing* election to withhold ballots from the voters on their flawed lists and/or otherwise segregate these—until those people provide verification of information not required under state or federal law—is illegal. (hereinafter referred to as "Alleged Non-Citizen Removal Policy" or the "Policy"). The brazenness of Defendants' actions is breathtaking—a District Court held just today concluded with respect to this Policy, "Never before in American history has the federal government, on the eve of an election, sought to coerce a state and local government to abandon their own Constitutional elections procedures and bend to the will of the Executive Branch." *United States v State of California, et al.*, 2:26-cv-12025-DOC-ADS, slip op. at 1 (Exhibit 14). Since Plaintiffs filed their application for a temporary restraining order, Defendants' have issued threats to county election officials in every county in California. Although Defendants have been denied the civil injunction they sought against Los Angeles County and the state (*see id.)*, there is every reason to believe Defendants will employ these flawed lists in remaining days of voting, in after-election challenges and in criminal prosecutions.

Despite their arguments otherwise, the United States Constitution and federal law does not provide Defendants' any power to police voter rolls for non-citizens. The National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(c)(2)(A), prevents election officials from carrying out Defendants' *de facto* voter purge 90-days before a federal election. Defendants' Policy was adopted and implemented in violation of the Administrative Procedure Act ("APA") because it exceeds their statutory authority and is arbitrary and capricious. Furthermore, the lack of any constitutional or statutory authority for Defendants' imposing what amounts to new voter qualifications and election regulations for California are plainly *ultra vires*.

While Plaintiffs are likely to succeed on the merits, the timing of Defendants' actions alone weigh in favor of granting Plaintiffs' temporary restraining order. Under the *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006), federal courts should not alter election rules on the eve of an election. Congress has at least granted federal courts jurisdiction over election litigation; it has not given the Executive Branch the authority it is unlawfully asserting/exercising. Here, "[t]he election is not merely upcoming; it has already started," and therefore "[t]he *Purcell* principle applies with even greater force." *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) ("*Politicians*").

At bottom, Defendants' Policy seeks to supplant valid state election procedures that Defendants have a policy disagreement with, in violation of federal law and multiple Constitutional provisions and in doing so, are sowing chaos during an ongoing election and threatening the public's "strong interest in exercising the fundamental political right to vote," *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (internal quotation marks omitted). This Court should enjoin Defendants Policy before more voters are disenfranchised.

## ARGUMENT

### I. Plaintiffs Have Standing

Defendants make several unavailing arguments attacking individual Plaintiff Pedro Trujillo and Organizational Plaintiff CHIRLA's standing. Each argument fails.

#### A. Individual Plaintiff Pedro Trujillo Has Standing

Defendants claim that Mr. Trujillo is "not included in the Department of Homeland Security's (DHS) list of likely noncitizen voters it sent to California." Resp. Defs.' Opp. to Pls.' Mot. for TRO and Prelim. Inj. at 1 and 9-10, No. 38 ("Defs. Mot.") (emphasis omitted). Which of the many lists DOJ has sent state and local officials, Defendants' argument does not identify. Was Mr. Trujillo on the original list of approximately 190,000 that was first sent to state officials and

that triggered the filing, on September 2, of the Complaint in this case? *See* ECF No. 1 at ¶ 3. Regardless, even were the Defendants to offer proof that Mr. Trujillo has, so far, not been included on *any* of the lists, say by allowing the Court an *in camera* inspection of each of them, the ongoing harm to Mr. Trujillo of Defendants' *ultra vires* conduct remains. Plaintiff Trujillo must nevertheless remain vigilant to track his registration and later, ballot, to ensure that Defendants' attempts at haphazard list maintenance do not endanger his right to vote. As shown *infra* the slipshod manner in which the Defendants produce these lists leaves Plaintiff Trujillo at risk that his name shows up (perhaps again) on the next one. Hardly a week goes by that Defendants do not produce and transmit a new list. *See* Laurel Rosenhall & Shawn Hubler, *Justice Dept. Demands That California Counties Help Identify Noncitizen Voters*, N.Y. TIMES (Oct. 23, 2026), https://www.nytimes.com/2026/10/23/us/justice-dept-california-noncitizen-voters.html. By spending the time, money and effort to file a federal lawsuit and seeking emergency relief, Mr. Trujillo had been able to confirm he was not on one of the lists. He must do so again when Defendants produce another list. Every other voter in his position suffers the same burden to take steps to protect the vulnerability of their right to vote caused by Defendants' illegal conduct.

**B. CHIRLA Has Associational Standing.**

Plaintiff CHIRLA has associational standing. CHIRLA cannot know which and how many of its members are on each of the flawed lists when, if ever, they are distributed with little to no notice. Given this, CHIRLA must remain vigilant on behalf of all its members and clients. CHIRLA must continue to expend time, money and effort combatting the suppressive and chilling effects of Defendants' actions.

Defendants claim that since California has declined to comply with their demand, Plaintiffs' fear of harm is speculative and unfounded. Not true. Defendants' demand for unlawful

ballot segregation is not limited to the California Secretary of State and Los Angeles County. Rather, Defendants have sent demand letters ordering ballots to be set aside to election officials in all 58 counties in California many of which CHIRLA has members. Becca Habegger, *DOJ Demands California Set Aside Ballots Amid Citizenship Verification Demands*, ABC 10 (October 27, 2026, 10:23 AM PT) https://www.abc10.com/article/news/politics/elections/doj-demands-california-set-aside-ballots-amid-citizenship-verification-demands/103-f7c2438d-510b-49a1-b3d3-ca1d1510a286. Furthermore, throughout the mail voting period, Election Day, tabulation period, recount period, contest period and result certification, CHIRLA must divert resources from their budgeted purposes to protect the votes of its members from disenfranchisement due to one of the existing or one the forthcoming Defendant-produced target lists.

While California and Los Angeles County have declined action, others have not done so. The letters transmitting the lists include serious threats. Assistant U.S. Attorney Bill Essayli confirmed these threats, stating "The letters speak for themselves. Any election official who knowingly processes the ballot of a noncitizen is opening themselves to legal jeopardy." Brittny Mejia & Kevin Rector, *'This Is Not Normal': Feds Demand California Counties Set Aside 'Likely' Noncitizen Ballots*, L.A. TIMES (Oct. 23, 2026, 12:24 PM PT) https://www.latimes.com/california/story/2026-10-23/trump-administration-election-letters-california-counties. It is not surprising that, in response to these threats, some counties are working the lists and when they do, they are discovering a continuing pattern of astounding inaccuracy. Solano County reported that 55% of the voters on the list were canceled voters, while Mendocino County stated that every individual on the list they received lived outside the county. Habegger, *DOJ demands California set aside ballots amid citizenship verification demands*. This alone shows that some counties are, in fact, working the lists. CHRILA must continue to pour resources into

tracking the eligibility status of its members and clients in 57 of the 58 California counties—and remain ready to do the same in LA County should events change.

Even assuming arguendo that all counties refused to comply with Defendants' pre-tabulation ballot segregation demands, every voter on each of these lists remain at risk their ballot will not be counted. This is because California law provides a challenge process that allows election observers to challenge ballots as they are being processed. *See* Cal. Code Regs. Tit. 2, § 20879; *United States v. California*, No. 2:26-cv-12025 (C.D. Cal. Oct. 20, 2026), ECF No. 31-1. The United States is no doubt aware of the ballot challenging procedures within the State of California. ECF No. 31-1, *United States v. California*, No. 26-7070, 2026 WL 3212945, at *19 (9th Cir. Oct. 26, 2026) (Sanchez, J., concurring). Worse still, the DOJ argued that Cal. Elec. Code. § 15016, key to the challenge process specifically, is preempted by 18 U.S.C. § 611. *See* United States Court of Appeals for the Ninth Circuit, 26-7070 *United States of America v. State of California*; et al., YOUTUBE at 23:52 to 25:06 (Oct. 25, 2026), https://www.youtube.com/watch?v=koUbo_MJlNE&t=13s. According to this argument, Defendants' deployed election observers could challenge ballots as they are processed, without providing the "extraordinary proof" required by state law and do so despite the fact that these statutes do not contemplate "a large-scale mechanism for challenge to and database-centered verification of, the citizenship of tens of thousands of voters." *United States v. California*, No. 26-7070, 2026 WL 3212945, at *19 (9th Cir. Oct. 26, 2026) (Sanchez, J., concurring). CHIRLA thus must divert its resources to remain vigilant on behalf of its members until final certification of the vote occurs, more than a month from now.

The cases Defendants cite do not support their standing argument. For example, Defendants rely heavily on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), to argue

any harm was far too speculative and attenuated for standing purposes.[1] There, the Court cited at least 5 steps that would have to occur before those Plaintiffs would suffer harm. *See id.* at 410. Here the harm is already being suffered. The production of these inaccurate lists, that keeps occurring, coupled with threats to voters and election officials, caused and is causing the harms Plaintiffs complain of.

While Defendants characterize Plaintiffs' current fear of prosecution for exercising their right to vote as merely "speculative," ECF No. 38 at 1, it is not speculative to fear criminal prosecution when Defendants, in public, appear to be concerned with nothing else. They have threatened election officials with criminal prosecution (*see* ECF No. 31 at 9-12.), publicly touted arrests of alleged noncitizen voters, gone door to door asking people about their immigration status, and publicly stated that they are "laser focused on identifying, prosecuting, and removing aliens who vote and dilute the votes of U.S. citizens." Joe Walsh, *Judge Rules Against DHS's Policy of Knocking on Doors to Track Down Possible Noncitizen Voters*, CBS NEWS (Oct.22, 2026, 12:39 PM EDT) https://www.cbsnews.com/news/judge-dhs-noncitizen-voters-ruling/. This was all preceded by an increase in Immigration and Customs Enforcement (ICE) raids throughout California *See* Anthony Victoria, *California Lawmakers Warn Immigration Raids Could Suppress the Vote*, KVCR (Oct. 14, 2026) https://kvcr.org/news/local/2026-10-14/california-lawmakers-warn-immigration-raids-could-suppress-vote. It would require an incredible suspension of disbelief to presume that the Defendants will stop making demands based on these inaccurate lists

[1] Other cases cited are similarly distinguishable. In *California v. Texas*, for example, the Court found a lack of standing where the challenged provision of an Act essentially had no enforcement mechanism and persons faced no penalty for not complying with it. Here, Defendants have made the penalty for voters clear, disenfranchisement and the risk for them as well as election officials: criminal prosecution. *California v. Texas*, 593 U.S. 659, 670-675 (2021).

absent a court order. They have consistently and relentless deployed the lists since July when President Trump announced this program as his priority. *See* ECF No. 1 at ¶¶ 2-4; Exhibit 11.

**C. CHIRLA Has Organizational Standing.**

CHIRLA also has organizational standing. The cases Defendants cite are easily distinguishable. Defendants rely heavily on *FDA v. Alliance for Hippocratic Medicine,* 602 U.S. 367 (2024). *See* Defs. Mot. at 14-19. However, the facts of that case differ significantly from those here. There, while the plaintiffs opposed actions by the Food and Drug Administration (FDA), there was no way any of those actions could directly impact them. *Alliance*, 602 U.S. at 373-74. Rather, they opposed how the regulations affected others and the expenditures they claimed as harm were primarily for advocacy against the basic premise of the regulation. *Id*. at 385, 394. The Court in *Alliance* emphasized that the standing requirement was meant to prevent the courts from being used as a "vehicle for vindication of the value interests of concerned bystanders." *Id*. at 382 (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984)). That is not what is occurring here. CHIRLA and its members are not expending resources to simply voice their disapproval of the policy; rather, they are taking new, expensive, and never-before-used tactics to protect their member, staff, and volunteers voter registration and ballots while working to assuage the very real fears caused by Defendants' public threats of prosecution.

The facts in this case are closer to *Center for Taxpayer Rights v. IRS*, also cited by Defendants, where organizational plaintiffs challenged a policy disclosing tax return information to ICE. No. 26-5006, 2026 WL 2635380, at *3, *5 (D.C. Cir. Sep. 8, 2026). There, although defendants claimed that the injury was "not cognizable because it 'depends on the independent choices of third parties,'" the court noted that "an injury may be premised 'on the predictable effect of Government action on the decision of third parties.'" *Id*. at *5 (quoting *Dep't of Com. v. New*

*York*, 588 U.S. 752, 768 (2019)). In this case, the effects of Defendants' actions aren't just predictable, they are occurring. California counties (other than Los Angeles) are working the lists at Defendants' demand. CHIRLA's voter members are being dissuaded from voting. *See* ECF No. 34-5.

These events have caused CHIRLA to take very real action to help lessen the harm. *See* ECF No. 34-5 at ¶8-9. CHIRLA has had to increase mobilization, with staff dedicating hundreds of additional hours to educate and assuage the fears of the voters. *Id*. This work includes new "Voter-know-your-rights" trainings and specific mobilization efforts toward voters who have expressed that Defendants' actions have dissuaded them from voting. *Id*. at ¶ 10. This unprecedented amount of fear (caused by unprecedented federal action) has led CHIRLA to divert its limited resources from their budgeted purposes to undertake efforts to protect their members and clients' voter registration and ballots while gearing up to protect these citizens' Right to Vote during the aforementioned forthcoming challenge period. CHIRLA has been forced, in short order, to develop a new ballot curing program solely in response to Defendants' actions. *Id*. at ¶ 19. These actions are not self-inflicted harm or simple policy advocacy to advance its organizational beliefs, but rather necessary actions to ensure its members' votes are cast and counted.

Finally, this case is similar to the *Dept. of Homeland Sec., et al. v. League of Women Voters,* 26A308, 2026 WL 2879700, at *3 (U.S. Sept. 25, 2026), except the program at issue here is not simply made available to states, but rather is forced upon them. In that case, though finding their claims lacked merit given specific statutory language, the Supreme Court concluded "…the plaintiff organizations likely have standing…).

**D. There is Sufficient Connection in the Complaint to Relief Requested.**

Defendants argue, without specificity, that the relief requested has insufficient connection to the Complaint. *See* ECF No. 38 at 7, n. 2. Not true. The primary focus of the Complaint, is the wrongful conduct of Defendants to create lists, utilizing flawed methodology, and threatening voters and officials with these secret lists. *See* ECF No. 1 at ¶ 36-76. In one example, the Complaint avers, "the Executive Branch launched several initiatives purportedly aimed at preventing noncitizen voting, including the institution of Executive Orders calling on DHS and the Attorney General to take action to investigate noncitizen voting, institute state information sharing agreements, withhold funds from "uncooperative" states, and compile and distribute databases of state citizenship lists." Plaintiffs plead that Defendants be enjoined from "from imposing the list matching exercise/voter purge on the State of California and its local elections officials*…" Id.* at ¶ 39. This remains the relief Plaintiffs seek with this motion. To support this relief Plaintiffs, rely on nearly every cause of action listed in the complaint. *Compare* Compl. ¶¶ 94-151 *with* Pls.' Superceding Emerg. Appl. For TRO and Prelim Inj. 24, 26-27, 28-29, ECF 34 ("Pls. Superceding App.").

*Bird v. Barr* does not support Defendants' contention that "some claims lack sufficient nexus to the allegations and causes of action" because that case is dissimilar. *Bird v. Barr*, No. 19-CV-1581, 2020 WL 4219784 (D.D.C. July 23, 2020). There, although the original complaint was filed alleging sex-based discrimination, the motion for preliminary injunction sought relief from retaliation against the plaintiff and another party as a result of bringing the suit. *Id.* at *3. Plaintiffs' Motion seeks the very relief listed in the Complaint. *See* ECF No. 1 at ¶ 34-35.

**II. Plaintiffs are Likely to Succeed on the Merits of Their Claims.**

Plaintiffs are likely to prevail on their claims.

**A. Defendants' Policy and actions violate the Constitution.**

Defendants' Policy violates multiple provisions of the U.S. Constitution that assign authority over federal elections to the States and Congress, not to the Executive Branch.

Defendants' Policy violates the Elections Clause because it is an attempt to supersede California's election law without any delegation from Congress. The Elections Clause commits the "Times, Places and Manner of holding Elections for Senators and Representatives" to the States, subject to alteration only by Congress. U.S. Const. art. I, § 4, cl. 1; *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013) (*"ITCA")*. The States' power over election law is "comprehensive," reaching "supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers," and every other "procedure and safeguard[]" needed to conduct an election. *Smiley v. Holm*, 285 U.S. 355, 366 (1932). In regulating federal elections, Congress must do so "by positive and clear statutes." *United States v. Gradwell*, 243 U.S. 476, 485 (1917). Federal law only displaces state election law in "so far as its exercised, and no farther." *ITCA*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)).

First, the sole statute that Defendants argue evidence Congress empowering Defendants to make, disseminate, and require state officials to use their alleged non-citizen lists, is a general criminal statute passed under Congress's plenary immigration power that has no mention of voter roll maintenance. *See* ECF 38 at 26-29. When Congress has intended to preempt state election laws, it has done so explicitly. *See e.g.,* the NVRA (52 U.S.C. § 20501 *et seq*.), and the Help America Vote Act (52 U.S.C. § 20901 *et seq*.) ("HAVA").

The text of the statute confirms that there is no preemption. 18 U.S.C. § 611 states that "[i]t shall be unlawful for any alien to vote in any election held solely or in part for the purpose of

electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner…" and explicitly recognizes that states might impose other qualifications to vote. 18 U.S.C.A. § 611(a)(1)-(a)(3). The text only governs an individual's conduct and provides Defendants the ability to prosecute an individual under the criminal process. *Id.* at (b) ("Any Person who violates this section. . . .") It says nothing about performing list matching, requiring states to segregate ballots of alleged non-citizens, requiring citizenship clearance, or even permitting the prosecution of persons who encourage, promote or "aid and abet." Def. Mot. at 28. *See Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 241 (D.D.C. 2019) ("Plaintiffs cannot reasonably assert that Congress must have meant something different than what its statute plainly says."). "A misdemeanor statute regulating individual conduct neither conflicts with nor preemptively extends to Defendants' actions of sending vote-by-mail ballots, tabulating them on their return, or dealing with challenges to particular ballots." *California*, 2026 WL 3212945, at *10 (Bennett, J., concurring); *see also Watson v. Republican National Committee*, 609 U.S. 672, 676-77 (2026) (holding that a general statute regulating Election Day had no impact on state laws that regulate when ballots must be received.).

Defendants' argument regarding "aiding and abetting" is also misplaced. Def. Mot. at 28. To determine whether a state procedure "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the court must employ its judgment "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Obstacle preemption is a "high threshold" *Chamber of Com. Of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n.*, 505 U.S. 88, 110 (1992) (Kennedy, J., concurring in part

and concurring in judgment). 18 U.S.C. § 611(a) does not impose any duty on California or its election officials. *See Henderson v. United States*, 237 F.2d 169, 176 (5th Cir. 1956) (holding that in the text of the federal criminal statute for conspiracy to commit a crime against or defraud the United States, Congress did not impose a duty on state law enforcement officers to enforce federal criminal law, though they might otherwise voluntarily cooperate). *See also League of Women Voters,* 26A308, 2026 WL 2879700, at *1 (staying injunction against using SAVE databases to prepare alleged illegal voter lists because the state (Louisiana) asked for the information.).

California election officials' actions do not frustrate the purpose of the criminal statute. *See United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019) (holding that declining to cooperate in federal immigration enforcement efforts was not obstacle preemption and the state retained the right of refusal); *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) (holding that immigration laws premised on "cooperative agreements" may not preempt state laws withholding cooperation). Even Defendants concede that "a State is not required to help the Federal Government investigate and prosecute crimes." Def. Mot. at 29.

The federal government cannot require state officials be "'dragooned' into administering federal law" under the Tenth Amendment. *Printz v. United States*, 521 U.S. 898, 928 (1997). This principle has even stronger application to election regulations because "the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections." *Gregory v. Ashcroft*, 501 U.S. 452, 461-62 (1991) (quoting *Oregon v. Mitchell*, 400 U.S. 112, 124-25 (1970)). "States have 'broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Shelby County v. Holder*, 570 U.S. 529, 543 (2013) (*quoting Carrington v. Rash*, 380 U.S. 89, 91 (1965)). The Supreme Court held unconstitutional the one Congressional enactment that purported to grant a federal agency the

authority to "'negative' state laws." *See id.* at 542-43. Here, Defendants rely on no such Congressional grant of authority. As such, Defendant's Policy violates the Elections Clause, the Voter Qualification Clause, and the Tenth Amendment.

**B. Defendants' Policy is Ultra Vires.**

Plaintiffs' have demonstrated that Defendants' have acted *ultra vires.* Defendants' assert that Plaintiffs' only allege *ultra vires* action based on Defendants' violation of the NVRA. Def. Mot. at 25. Incorrect. Plaintiffs argue in their superseding TRO, and *supra*, that Defendants acted absent any statutory authority and in direct violation of the provisions of the Constitution. ECF 34 at 28-29. Plaintiffs clearly explain that "[n]o source of law supports Defendants' actions or Policy." *Id*. at 29. *DOL*, 836 F.Supp. at 173 (finding plaintiffs ultra vires claims as statutory where plaintiffs "appear to concede the statutory ultra vires requirements apply" and failed "to invoke the Constitution at any point in their ultra vires briefing).

Plaintiffs' argument that Defendants violate the Constitution do not simply rest on the premise that Defendants directly contravened Congress directives in statutes, rather that their actions conflict with the Tenth Amendment as well as the **"**separation of powers and federalism limits imposed by the Elections Clause, the Voter Qualifications Clause, and the Seventeenth Amendment," in addition to violating Congressional mandates. *Compare,* ECF 34 at 28-29 *with*, *Sustainability Inst. v. Trump*, 165 F.4th 817, 831-32 (4th Cir. 2026) (finding ultra vires claims to be statutory rather than constitutional where Plaintiffs constitutional claims rested entirely on executive officials' violation of statutes.). Arguing that Defendants lack any constitutional authority to undertake the actions at issue here is a clear *ultra vire*s violation constitutional in nature.

However, if the Court interpreted Plaintiffs' ultra vires argument solely as statutory, Plaintiffs have demonstrated success on the merits. To succeed on a statutory *ultra vires* claim, "(i) there must be no express statutory preclusion of all judicial review; (ii) there must be no alternative procedure for review of the claim; and (iii) the agency must plainly act "in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *AFL-CIO v. DOL*, 836 F. Supp. 3d 137, 172 (2d Cir. 2016) quoting *Fed. Express Corp. v. U.S. Dep't of Com*. 39 4th 756, 763 (D.C. Cir. 2022).

Plaintiffs meet this standard. First, there are no express statutory preclusions of judicial review, nor do Defendants contend there is. Second, even if Defendants are correct in that the actions Plaintiffs contest are not final agency actions, then Plaintiffs do not have alternative procedure for review of their claim under the APA. Def. Mot. at 2. Finally, it is clear that Defendants' actions plainly are "in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DOL*, 836 F. Supp. at 172 (quoting *U.S. Dep't of Com*. 39 4th at 763). Demanding and threatening California and its counties to engage in what is essentially voter roll list maintenance less than 90 days before the election is a clear violation of the NVRA. *See supra,* (c)(ii).

**C. Defendants' Policy and actions violate the APA.**

**i. Defendants' Policy is a final agency action.**

Defendants argue that the actions complained of are not final "agency action" under the APA. Def. Mot. at 21-23. Not true. Defendants' Policy is final agency action because it represents the consummation of Defendants' decision-making process: DOJ and DHS have made the final decision to adopt a policy of creating alleged lists of non-citizens, transmit them to California

election officials, and then employing criminal and civil enforcement threats, coerce these officials to work from the lists to segregate and/or withhold ballots from California voters.

Defendants' actions do not have to be explicitly defined in order for a court to find that they are final agency action. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 138–39 (D.D.C. 2018); *Venetian Casino Resort LLC v. EEOC,* 530 F.3d 925, 929 (D.C. Cir. 2008) (finding that an unwritten policy of disclosing confidential information without notice was "surely a consummation of the agency's decision-making process" and that the policy impacted the plaintiff's rights such that it was a final agency action.). "The D.C. Circuit has explained that [determining whether an agency action is final action] is a 'pragmatic and flexible' inquiry." *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.,* 815 F. Supp. 3d 1, 40 (D.D.C. 2025), *aff'd*, No. 26-5006, 2026 WL 2635380 (D.C. Cir. Sept. 8, 2026).

In *Ctr. For Taxpayer Rts.*, the court determined that the IRS's adoption and implementation of a policy disclosing confidential information of taxpayers to Immigration and Customs Enforcement ("ICE") under IRS code based on representations from ICE that the information will be used for immigration-related criminal investigations and proceedings, even when only one ICE employee was engaged in each of the relevant criminal proceedings, was a final agency action. *Id.* The court reasoned that because the information shared by the IRS with ICE could lead to criminal investigation or prosecution, it was a sufficient legal consequence to make the agency's action final. *Id.* at 42.

Defendants' Policy in this case is final for the same reasons as in *Ctr. For Taxpayer Rts.* It is a final decision in that the lists were compiled and sent to California counties to use on their voter rolls during this current election. And if the State or California counties refused to use such lists, Defendants threatened prosecution and/or other legal consequences. Additionally, the sharing

of this information from Defendants to California and county officials has legal consequences for Plaintiffs and Plaintiff CHIRLA's members because the information within the lists could be used for criminal and/or civil prosecution.

**ii. Defendants' Policy is arbitrary and capricious.**

Defendants' Policy of continued creation and dissemination of alleged non-citizen lists and threats to election officials in California is arbitrary and capricious. Defendants argue (1) that Plaintiffs have forfeited their arguments by not citing enough law; and (2) that their "demand letters reasonably explain the factual basis for their requests for cooperation." ECF 38 at 24. Neither argument is meritorious.

As to the first issue, Plaintiffs include a whole section in their superseding motion for relief arguing the Policy is "arbitrary and capricious. ECF 31 at 23-25. Plaintiffs previously provided the Court the report of Kassra Oskooii, Ph.D. that outlines the methodological problems with Defendants' list matching exercise. *See* ECF 31-6. Attached hereto is an additional report by UCLA Professor Matt Barreto, Ph.D., and colleagues, that reviews Defendants' filings these last few days describing their list matching exercise. *See* Exhibit. 12 This report describes and details all the flaws with Defendants' methodology, including that Defendants' third-party data disclaims that it's data should be relied upon and may contain errors. *Id.* at ¶ 29-31. These flaws have revealed themselves in media reports from county election officials, who, in response to the federal threats, have worked the lists Defendants are transmitting. *See, supra.* The production of these lists could not be more arbitrary and capricious.

The timing of an agency action is sufficient for this Court to find the Policy arbitrary and capricious in violation of the APA. *See United States Postal Serv. v. California*, No. 26A305, 2026 WL 2687160 (U.S. Sept. 14, 2026) (Kavanaugh, J. concurring) ("USPS"). In his concurrence in

*USPS*, Justice Kavanaugh supported a denial of a stay to implement election rules concerning ballot mail because "applying the rule in the 2026 elections would be arbitrary and capricious in violation of the Administrative Procedure Act because state and local election officials do not have sufficient time to reasonably implement the rule before the elections." Local election officials do not have time to implement Defendants' Policy during an ongoing election. *See* Exhibit 13 at ¶ 1-3. (Decl. of Aman Bhullar) (Los Angeles County's Assistant Registrar-Recorder who is responsible for election management and tally systems stating that they have "grave concerns about the potential catastrophic impact of implementing the DOJ's request to 'set aside vote-by-mail ballots from persons identified by the Federal Government likely to be noncitizens' based on a list of approximately 20,000 individuals."). Defendants make no attempt to explain why these lists and accompanying requests could not have been made earlier in the election cycle.

Moreover, agency action is arbitrary and capricious when the agency fails to "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020). By ordering California and its election officials to abandon their enacted election rules in the middle of an election, the Policy wholly disregards the significant reliance interests of voters, including Plaintiff CHIRLA's members, who have registered, requested ballots, and planned how to vote under those rules. Because the Policy never weighs those interests against its stated aims, it fails Regents' basic requirement of reasoned decision-making.

Lastly, Defendants did not consider any reasonable alternatives to the actions they took here. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983). Defendants had at least two obvious alternatives to their Policy. They could have quietly given

California the lists well before the election, leaving time for orderly review and work collaboratively to correct the lists. Or, they could have waited until the election was over, adhering to DOJ's longstanding policy against taking enforcement and investigative steps that disrupt an ongoing election. Richard C. Pilger, *Federal Prosecution of Election Offenses* 73 (8th ed. 2017), https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo145659/pdf/GOVPUB-J-PURL-gpo145659.pdf. Instead, Defendants chose the maximally disruptive action: they delivered the lists of alleged non-citizens and demanded that state and local officials segregate and/or withhold ballots of voters after voting had already begun. This was all done with great press fanfare and accompanied by grave threats of criminal prosecution from the President, department heads and the local U.S. Attorney.

**iii. Defendants' Policy exceeds statutory jurisdiction and violates the NVRA.**

Defendants do not address Plaintiffs' claim that their actions exceed their statutory jurisdiction, ECF No. 38 at 23-26, instead only arguing that there is no final agency rule and that their challenged actions are not arbitrary and capricious. *See* ECF 38 at 20-25. Defendants' failure to respond to an argument waives the issue. *See Gordon Coll. v. United States Small Bus. Admin.*, No. CV 23-614, 2024 WL 3471261, at *14, n. 12 (D.D.C. July 18, 2024).

Even if the argument was not waived, Plaintiffs have demonstrated that Defendants acted in excess of their statutory authority. Congress has not authorized Defendants Policy. Neither the NVRA, HAVA, nor 18 U.S.C. § 611 (which Defendants allege provide them authority), require states to verify a voter's eligibility to vote other than requiring that voter to provide a verification under penalty of perjury. *See* 52 U.S.C. § 20508(b)(2); and 52 U.S.C. § 21083(b)(2). No statute permits the forced use of Defendants' non-citizen list on their voter rolls. The Supreme Court's

order in the *League of Women Voters* case confirms that the use of a similar database program meant to identify non-citizens on a voter roll was only lawful if a state voluntarily sought to participate and it was not used within the NVRA "moratorium." *League of Women Voters,* 26A308, 2026 WL 2879700, at *3.

Furthermore, the NVRA clearly prohibits Defendants' demands to engage in voter roll list maintenance within 90 days of a federal election. Defendants contend that the NVRA doesn't prohibit their actions because they are not seeking "systematic or programmatic changes to any registration list" but are contesting the tabulation of ballots that "California now knows likely come from noncitizens." Def. Mot. at 32. But Defendants' demand that election officials segregate and/or withhold ballots from voters renders those voters ineligible through a blanket action. It is a *de facto* removal because those voters are treated as if they were not registered to vote to begin with. *See* 52 U.S.C. § 20507(c)(2).

Courts have found that using "a mass computerized data-matching process to compare the voter rolls with other state and federal databases" was a "systematic" removal. *Arcia v. Fla. Sec'y of State,* 772 F. 3d 1335, 1344 (11th Cir. 2014). Further, the NVRA's moratorium applies to "any program" which "strongly suggests that Congress intended the 90-Day Provision to encompass programs of any kind." *Id.*; *See also Mi Familia Vota v. Fontes*, 129 F. 4th 691, 715–17 (9th Cir. 2025); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("[T]he [NVRA] is more naturally read as a prohibition on the states' engaging in any systematic voter registration list purging in the months leading up to an election."); *Virginia Coal. for Immigrant Rts. v. Beals*, 803 F. Supp. 3d 454, 473 (E.D. Va. 2025), *appeal dismissed,* No. 25-2108, 2026 WL 2790745 (4th Cir. Apr. 24, 2026).

With respect to Defendants' assertion that California possesses information that ballots are coming from noncitizens, many of the California county officials who have succumbed to working the lists have concluded that they are wildly incorrect. Plaintiffs' expert likewise has demonstrated that Defendants' list is inaccurate. *See generally,* Exhibit 12 (Barreto Decl.). And Acting U.S. Deputy Attorney General McCotter has stated about the lists that "[t]here may be some names on there who it turns out ultimately are citizens. We're not perfect." USAO Central District of California, *Operation Protect the Vote Announcement*, YOUTUBE, at 20:20-20:28 (Oct. 19, 2026), https://www.youtube.com/watch?v=zmZq3DrhwOM.

Agency action "not in accordance with law" means action contrary to "*any* law, [] not merely those laws that the agency itself is charged with administering." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003). Defendants' actions and policy, which would result in voters having their ballots segregated or withheld by California election officials, violate the NVRA moratorium. *See* 52 U.S.C. § 20507(c)(2)(A). As such, Defendants have exceeded the limits Congress placed on them and violated the APA based on conflicts with the NVRA.

**III. Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief.**

Plaintiffs have and will continue to suffer irreparable harm if Defendants are permitted to continue their Policy. Defendants rely on *DSCC v. Trump*, 834 F. Supp. 3d 19 (D.D.C. 2026), for the proposition that a failure to establish standing is fatal to an irreparable harm claim. However, the facts for irreparable harm are significantly stronger here than in *DSCC*. In *DSCC*, the court relied on the fact that the government action had not yet "mandate[d] any action" by a state. *Id*. at 28. The court explicitly noted that preliminary relief was unwarranted "until" the government "ultimately issue[s] a final rule that directly affects Plaintiffs or their members." *Id*. at 27. *DSCC*'s logic barely applies. Here, Defendants have issued numerous demands, under threat of criminal

prosecution, that California officials take an action (withholding or segregating and not counting individuals' ballots) that, as discussed above is illegal. Plaintiffs have shown (with evidence ECF Nos. 34-5, 34-8, 34-9, 34-10) what harm these events have caused voters, CHIRLA members and CHIRLA to undertake to offset the risk of harm that one or more counties will succumb to this pressure. Plaintiffs have firmly established irreparable harm. Defendants have further escalated enforcement of their Policy, and the accompanying legal threats, requiring CHIRLA to respond in kind to mitigate the harms being inflicted on its members and clients. Defendants' actions and threats of consequences constitute the very mandate the court in *DSCC* was looking for.

Further, in relying on the state and one county's refusal to implement its unlawful mandates, Defendants deliberately minimize and misstate the extent of both the current and future harms. The evidence is uncontested that some counties are working the lists. The continuous demands and threats, unless enjoined, will continue to sow chaos, distrust in the election system, and fear to cast a ballot among Plaintiffs and Plaintiff CHIRLA's members. *See* ECF Nos. 34-5, 34-9. Additionally, Defendants have made clear they intend to continue and expand the Policy. The Court can fully expect that Defendants will keep sending additional lists to additional counties as they have started to do so in the state of Washington. Nor have Defendants committed to refraining from using these flawed lists to challenge voters during voting, challenging ballots from tabulation, or using these lists to challenge the election outcome certification process, in support of an official election contest before the U.S House of Representatives, or in a judicial election contest. The claim that the State and one county refuse to act on these demands breaks the necessary causal chain, fails to acknowledge the range of harms including continued interference with the administration of the 2026 General Election, discouragement of voting, as well risk of distorting the fundamental right to the franchise. *See KalshiEX LLC v. Commodity Futures Trading*

*Comm'n*, 119 F.4th 58, 66 (D.C. Cir. 2024) ("[A] substantiated risk of distorting the electoral process would amount to irreparable harm.").

**IV. Balance of Equities and Public Interest Favor an Injunction.**

The balance of the equities and public interest favors granting Plaintiffs' temporary restraining order. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "[T]he balance of the equities and public interest factors "merge when, as here, the Government is the opposing party." *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022) (quoting *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020)).

Because the Constitution leaves election administration to the states and Defendants' Policy is a serious "federal intrusion into sensitive areas of state and local policymaking," granting Plaintiffs' temporary restraining order would preserve the *statute quo* of California elections process. *Shelby County,* 570 U.S. at 545 (quoting *Lopez v. Monterey County*, 525 U.S. 266, 282 (1999)). Indeed, Defendants' actions represent an "extraordinary departure from the traditional course of relations between the States and the Federal Government," *Id.* (quoting *Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 500–501 (1992)). This departure is not justified in any way.

Defendants purport to be harmed by the granting of Plaintiffs' application because they have a compelling interest in combatting voter fraud. Def. Mot. at 35-37. Never mind that Defendants cite no congressional enactment that grants them authority to undertake these acts. Anyway, Defendants have been able to investigate and charge persons who they allege are committing voter fraud therefore employing the prosecution authority that 18 U.S.C. § 611 grants them. ECF No. 34-1. The injunction Plaintiffs request in no way interferes with such criminal authority except to prohibit the use of one of these flawed lists to support probable cause for a

charge or arrest. The Defendants' legitimate interests are in no manner harmed by the requested injunction.

Instead, the continued Policy and harassment of election officials "threaten[s] disenfranchisement" of American citizens; disenfranchisement outweigh claims of voter fraud when "the record includes no evidence relating" to fraud to support the "rushed implementation" of a policy. *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549-IT, 2026 WL 2620871, at *25 (D. Mass. Sept. 4, 2026). Plaintiffs and the public are being continually harmed by the Policy and they have a strong interest in an unimpeded exercise of the right to vote, under laws passed by their forum state, and enforcement of the state's reasonable safeguards that seek to ensure as many qualified voters are able to vote as possible. *League of Women Voters of United States v. Newby,* 838 F.3d 1, 12 (D.C. Cir. 2016) ("The public 'has a strong interest in exercising the fundamental political right to vote' ... a right that is preservative of all rights ... and of the most fundamental significance under our constitutional structure") (internal citation omitted). Because "[t]he public interest therefore favors permitting as many qualified voters to vote as possible," any federal action that jeopardizes the right to vote, including the ability of a local government to fairly administer elections, is against the public interest and disfavors Defendants. *Id.*

But even if Defendants could factually justify their Policy, Defendants would suffer no harm if the Alleged Non-Citizen Removal Policy were temporarily enjoined because "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.'" *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 (D.D.C. 2020) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)).

Finally, the *Purcell* principle weighs strongly in favor of granting relief. The *Purcell* principle counsels "that lower federal courts should ordinarily not alter the election rules on the

eve of an election." *LULAC v. Exec. Office of the President*, 818 F. Supp. 3d 34, 82 (D.D.C. 2026) (quoting *RNC v. DNC*, 589 U.S. 423, 424 (2020) (per curiam). Its purpose is to avoid "voter confusion" and to ensure that federal courts do not undermine "[c]onfidence in the integrity of our electoral processes," which is "essential to the functioning of our participatory democracy." *Id.* (quoting *Purcell v. Gonzalez*, 549 U.S. 1 at 4–5).

Courts, including the Supreme Court, have invoked the *Purcell* principle throughout this election cycle to enjoin actions that would harm election administration. *See Politicians,* No. 26A388, 2026 WL 2883222, at *2. In *Politicians,* the Supreme Court this September rejected ordering the revisions to Missouri's congressional map under *Purcell*, stating that "[t]he election is not merely upcoming; it has already started," and ordering any changes "in the midst of an ongoing election would usher in electoral chaos." *Id.*

The principle applies with the same force when a federal agency, especially without clear congressional authority, order state officials around during an election. **"**It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for the [federal government] to swoop in and re-do a State's election laws in the period close to an election." *Merrill v, Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J. concurring). Defendants are unlawfully attempting to change the rules in place during the ongoing election, causing voter confusion and undermining faith in the right to cast a ballot free from intimidation or fear. Therefore, their actions "could be enjoined without implicating any federalism or reliance interests *because the injunction would preserve the States' existing electoral status quo*." *DSCC v. Trump,* No. 26-CV-01114, 2026 WL 2681471, at *11 (D.D.C. Sept. 13, 2026) (quoting *DSCC v. Trump*, No. 26-5193, 2026 WL 2168617, at *6 (D.C. Cir. July 28, 2026)) (emphasis in original).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant its Motion and issue a temporary restraining order and preliminary injunction against Defendants.

Dated: October 28, 2026

Respectfully Submitted,

Xavier Becerra**
Senior Advisor and Voting Rights Counsel
108 W. 2nd Street, #310
Los Angeles, CA 90012
Telephone: 310-924-9310
Scheduling.becerra@gmail.com

*/s/ Chad W. Dunn*
Chad W. Dunn (DC Bar No. 987454)
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (D.C. Bar No. 1720816)
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone:310-279-6025
cbergquist@chirla.org

Adam Reese*
2533 West Third Street, Suite 101 Los Angeles, CA 90057
Tel: 213-353-1333
areese@chirla.org
*Licensed in the State of California, *Motion to appear pro hac vice* granted

**Licensed in the State of California, *Motion to appear pro hac vice*, forthcoming

**CERTIFICATE OF SERVICE**

I certify that on October 28, 2026, a true and correct copy of the foregoing was filed via the CM/ECF filing system and thereby furnished to counsel of record via email in the service list below:

Andrew I Warden, Esq.
andrew.warden@usdoj.gov
Ty Trejo, Esq.
ty.trejo@usdoj.gov

*Counsel for Defendants*

*s/ Chad W. Dunn*
Chad W. Dunn