**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS and PEDRO TRUJILLO,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as the Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as the Attorney General,<br><br>*Defendants*. | Case No. 1:26-cv-03072-JEB |

**PLAINTIFFS SUPPLEMENTAL BRIEFING REGARDING PLAINTIFFS STANDING AND THE DEFENDANTS' 20,000 ALLEGED NON-CITIZEN VOTER LIST**

Plaintiffs respectfully submit this supplemental briefing regarding organizational Plaintiff CHIRLA's standing pursuant to the Court's October 30, 2026, Order, and after expert review of the Defendants' 20,000 alleged non-citizen voter list (herein "Defendants' List" or "Non-Citizen List").

Mathew Barreto, Ph.D. and data scientist Michael Rios, MPP performed an analysis of the data file produced by Defendants under this Court's October 30, 2026, Order and have produced a Report.[1] The experts reach the following conclusion: "Based on my experience using the California voter file and matching records using accepted methodology in the social sciences, I am

[1] Attached hereto as Exhibit 17 is the Report with attached schedules. This document has been prepared in a similar manner as the declarations Defendants have filed in other litigation concerning their list matching exercises and redacts all personally identifying information.

certain there are entries on the CHIRLA citizen members and clients list that are on the DHS ineligible list of 20,930 names." *Id.* at ¶ 12.

Some of the other conclusions reached by the experts include:

> 1) "Based on scientific database matching methodology, I am certain that there at least 22[2] entries on the CHIRLA citizen list that fully match to the DHS ineligible list, using first name, middle name, last name, date of birth, and exact address, criteria even more stringent than that employed by the DOJ/DHS in their various expert declarations (e.g. Bartell and McLoughin)." *Id.* at ¶ 8.
>
> 2) "…8,880 names – or 42% – on the DOJ list were not anywhere to be found on the current California voter file." *Id.* at ¶ 26.
>
> 3) "[U]sing criteria the DOJ/DHS relied upon as probabilistic, using first name, last name and looser terms such as birth year, street name, or zip code, there are 6,140 CHIRLA citizen entries at risk of investigation as probable matches on the DHS ineligible list." *Id.* at ¶ 11.
>
> 4) "California has 3.8 million naturalized citizen voters on the current voter file, and based on the CHIRLA member/client match rate to the DHS ineligible list, extrapolating to the full set of 3.8 million immigrant voters would result in 3,743 certain incorrect matches, 7,486 highly likely incorrect matches, and as many as 348,238 probabilistic incorrect matches depending on the exact matching criteria, and list accuracy used by the DOJ/DHS." *Id.* at ¶ 21.

The report includes other opinions from the experts based on their extensive years of analysis utilizing the California data file. This review proves, at least as a preponderance of the evidence, that demands of election officials under civil and criminal threats, endangers the voting

---

[2] Two of these complete matches reside in Santa Cruz County (*Id.* at ¶ 13), whose election administrator (Tricia Weber) has told the LA Times, "I can't tell you anything other than I'm looking at it and doing my due diligence…" Brittny Mejia & Kevin Rector, *'This is not normal': Feds demand California counties set aside 'likely' noncitizen* ballots, L.A. TIMES (Oct. 23, 2026). https://www.latimes.com/california/story/2026-10-23/trump-administration-election-letters-california-counties. Ms. Weber also said, "From what I've been able to gather, most counties if not all of the counties are doing what I'm doing: Sat down with our counsel, went over everything." *Id.* Another article reports on how counties are responding to the lists. Laurel Rosenhall & Shawn Hubler, *Justice Dept. Demands That California Counties Help Identify Noncitizen Voters,* N.Y. TIMES (Oct. 23, 2026). https://www.nytimes.com/2026/10/23/us/justice-dept-california-noncitizen-voters.html

rights of Plaintiff CHIRLA's members and clients. The operational harms and diversion of staff time by CHIRLA to seek to protect its members are real, justified, and cognizable harms on CHIRLA as an organization. The expert analysis further makes clear that the mandated voter list endangers a significant number of eligible California voters, whether or not they are CHIRLA members or clients.

***Associational Standing***

To demonstrate Associational Standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

CHIRLA's members and clients who are citizens and who have also been identified on Defendants' List as complete or partial matches have standing to sue in their own right. This is because a voter who has been or might be erroneously flagged as a non-citizen by the government for the purpose of voter roll maintenance has standing. *See Arcia v. Fla. Sec'y of State,* 772 F.3d 1335, 1340-41 (11th Cir. 2014). Further, actions by the government that hinder a voter's ability to exercise the franchise establish standing. *See League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 61 (D.D.C. 2025), *aff'd sub nom, League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-5476, 2026 WL 1991571 (D.C. Cir. July 2, 2026). Defendants' have also stated their intent to investigate and prosecute the persons who are CHIRLA members and clients on the Alleged Non-Citizen List. Threats from the Government are a concrete harm.

CHIRLA is seeking to protect their members' and clients' Right to Vote, which is paramount to their organization's purpose. "A cornerstone of CHIRLA's above-described mission includes assisting those eligible to obtain their U.S. citizenship, and once citizenship is obtained, assisting with voter registration and thereafter encourage voter participation." ECF No. 34-5 at ¶ 3 (Salas Declaration). CHIRLA has established Associational standing.

**Organizational Standing**

Clearly, CHIRLA's efforts to educate its' voters, create new programs to counter act the voter fear and hesitancy to voter, spending hours of staff resources, and diverting of resources from traditional voter outreach because of Defendants' lists and mandates was and is needed. "CHIRLA has diverted our limited resources from engaging in other programmatic work central to our core mission at the time when those resources are most needed. But this is necessary given the unprecedented amount of confusion, fear, and concern our membership has experienced since the DOJ's first announcement about California and each move the federal government has made since then." *Id.* at ¶ 11. In this Circuit, allegations by a plaintiff organization that a defendant's conduct perceptibly impaired the organization's ability to provide services or disrupted daily operations is a sufficient cognizable injury. *See Common Cause v. U.S. Dep't of Just.*, No. CV 26-1352, 2026 WL 3033772, at *9 (D.D.C. Oct. 9, 2026).

The Government's List has placed CHIRLA's citizen members and clients, including those who are complete or nearly complete matches on Defendants' lists are at risk of having their registration removed, their ballot challenged during the tabulation process and/or being subjected to erroneous criminal investigation/prosecution. Since disseminating the first list to California, CHIRLA has had their daily operations disrupted to counter act the harms, fear, and voter miseducation created by Defendants. These events have hindered CHIRLA's members and clients'

Right to Vote for fear of either having their ballot sequestered or possibly prosecuted. Obviously, these fears are founded. Because CHIRLA's mission has been impeded, their members targeted, and they will have to continue to monitor the Defendants' actions because of the threat of investigation and prosecution Defendants have levied against CHIRLA's members, CHIRLA has demonstrated sufficient organizational harm.

Dated: October 31, 2026

Respectfully Submitted,

/s/ Chad W. Dunn

Xavier Becerra**
Senior Advisor and Voting Rights Counsel
108 W. 2nd Street, #310
Los Angeles, CA 90012
Telephone: 310-924-9310
Scheduling.becerra@gmail.com

Chad W. Dunn (DC Bar No. 987454)
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (D.C. Bar No. 1720816)
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone:310-279-6025
cbergquist@chirla.org

Adam Reese*
2533 West Third Street, Suite 101 Los Angeles, CA 90057
Tel: 213-353-1333
areese@chirla.org

*Licensed in the State of California, *Motion to appear pro hac vice* granted.
**Licensed in the State of California, *Motion to*

*appear pro hac vice*, forthcoming.

**CERTIFICATE OF SERVICE**

I certify that on October 31, 2026, a true and correct copy of the foregoing was filed via the CM/ECF filing system and thereby furnished to counsel of record via email in the service list below:

Andrew I Warden, Esq.
andrew.warden@usdoj.gov
Ty Trejo, Esq.
ty.trejo@usdoj.gov

*Counsel for Defendants*

*/s/ Chad W. Dunn*
Chad W. Dunn