**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-3072- JEB |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING STANDING**

Despite now having a *third* court-granted opportunity to shore up its deficient standing, CHIRLA still fails to meet its necessary jurisdictional burden. Plaintiffs' supplemental expert report does not change the fundamental fact that CHIRLA cannot establish a concrete and imminent injury necessary to establish standing—either associational or organizational—to obtain a prospective preliminary injunction.

As an initial matter, Defendants object to Plaintiffs' unilateral submission of an ex parte, in camera "Table of CHIRLA entries matched to DHS list," ECF No. 43-1 App'x A. Plaintiffs did not seek leave of the Court for such extraordinary action and provided no rationale for withholding the accumulated information, which allegedly establishes their standing to bring the underlying TRO motion and the suit more generally, from Defendants. Per the Court's October 30, 2026 Order, the identities of the individuals on the government's challenged list may not be disseminated publicly.

Nothing in the Order, however, permits Plaintiffs to rely on such information without providing their findings to Defendants. The principal question here is standing, and Plaintiffs, who bear the entire burden, seek to withhold from Defendants the information they claim establishes the Court's very jurisdiction to entertain this suit. "Only in the most extraordinary circumstances does [the D.C. Circuit's] precedent countenance court reliance upon *ex parte* evidence to decide the merits of a dispute." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) (superseded in part on other grounds). No such circumstances have even been alleged here. As explained below, without the identity of those alleged matches, Defendants cannot test the accuracy of Plaintiffs' assertions, and the Court lacks the full scope of information necessary to evaluate their standing claims. Put differently, the information is not subject to critical adversarial testing. Plaintiffs should be compelled to immediately provide Defendants with the list of alleged matches, as well as information about the individuals' membership. Plaintiffs' in camera filing should not be considered by the Court unless and until that happens.

Independent of that significant issue, Plaintiffs nevertheless continue to fail to establish standing as detailed herein.

**1.** As explained in Defendants' Opposition to Plaintiffs' Superseding TRO, ECF No. 38 at 6, 10, to potentially qualify for preliminary relief, a plaintiff must make a clear showing that it is likely to establish each element of standing by pointing to factual evidence. Here, Plaintiffs do not provide any factual evidence "identify[ing] [a single CHIRLA citizen] member[] who [has] suffered the requisite harm." *Summers v. Earth Island Inst.,* 555 U.S. 488, 499 (2009). As in *Summers*, "surely [that is] not a difficult task here, when so many thousands are alleged to have been harmed." *Id.*

Whether or not any CHIRLA citizen members appear on the challenged list is irrelevant to CHIRLA's associational standing if Plaintiffs cannot connect such individuals to the alleged fears surrounding voting. In other words, Plaintiffs' report does not supply the missing causal link and those fears remain speculative and "not fairly traceable to the conduct creating that fear." *Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905, 919 (D.C. Cir. 2015) (cleaned up); *see* Defs.' TRO Opp., ECF No. 38 at 10-11.

The Court must be able to assess whether Plaintiffs' alleged injury is concrete, actual, and *particular* to a certain identified member. *See, e.g.*, *Summers*, 555 U.S. at 493-94; *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). Here, the Court cannot make that necessary finding because there is no evidence that any of the "certain" or "near certain" individual matches alluded to by the supplemental report have expressed concerns to CHIRLA about potential obstacles to voting or incurred any cognizable harm. Plaintiffs' strategic choice to withhold that identifying information from Defendants is fatal to their standing. *See, e.g., Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815, 820 (D.C. Cir. 2006) (holding that "an organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact"); *Chamber of Commerce of the United States v. EPA*, 642 F.3d 192, 199-200 (D.C. Cir. 2011) ("Because the Chamber has not identified a single member who was or would be injured by EPA's waiver decision, it lacks standing to raise this challenge.").

In *Summers*, the Supreme Court explained that it has "dispensed with" the requirement "of naming the affected members" only "where *all* the members of the organization are affected by the challenged activity." 555 U.S. at 498-99. Here, Plaintiff cannot establish that every CHIRLA citizen member is on the government's list, let alone that every such member has

suffered a cognizable Article III injury. Indeed, Plaintiffs have not shown it is likely that any particular member has suffered the necessary injury because they have not provided any evidence that such individual members are the same members who have allegedly expressed that they are experiencing harms based on the challenged government actions. Plaintiffs' failure to adequately allege a single CHIRLA citizen member with sufficient factual nexus to the requisite harm defeats their associational standing claims. *Id.* at 499 ("The Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm—surely not a difficult task here[.]").

**2.** Even if Plaintiffs' supplemental filing did not expose that fatal causal flaw in their standing theory, their decision to refuse to send the relevant CHIRLA citizen member matches to Defendants smacks of gamesmanship that prevents Defendants' rebutting Plaintiffs' assertions in the normal adversarial course. Without the identity of the individual citizen members who are purportedly on the government's list, Defendants have no way to verify Plaintiffs' specific assertions, and the Court has no ability to assess Plaintiffs' claim through an adversarial process. There can be no finding that Plaintiffs have established a substantial likelihood of associational standing premised on factual evidence under these circumstances. Plaintiffs cannot have it both ways. They cannot simultaneously decline to provide to Defendants which of their members are on the government's list and at the same time insist that the Court issue a sweeping injunction based on those unidentified persons. Plaintiffs' strategic decision to withhold the identities of their purported members in this way should come at a cost – denial of their motion for a preliminary injunction.

Further, the Court should order Plaintiffs to provide all their data given that Plaintiffs have now submitted an analysis from experts. *See, e.g., United States ex rel. Morsell v.*

*NortonLifeLock, Inc.*, No. 12-cv-800 (RC), 2022 WL 278773, at *3 (D.D.C. Jan. 31, 2022) ("Rule 26(a) requires, among other things, pretrial disclosure of an expert report for any retained expert that contains "a complete statement of all opinions the witness will express and the basis and reasons for them," including "the facts or data considered by the witness in forming them" and "any exhibits that will be used to summarize or support" the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii).") (emphasis added). That includes the "California voter file" (which Plaintiffs' experts describe as California's "full voter file") that Plaintiffs' experts relied upon in conducting their expert analysis.[1] ECF No. 43-1 ¶ 12. Just as Plaintiffs were given the opportunity to compare Defendants' list against their materials and generate their own analysis, Defendants should be given the same opportunity to review Plaintiffs' materials against Defendants' list. If Plaintiffs refuse to produce the requested lists, they cannot be "allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial." *Saiyed v. Council on Am.-Islamic Rels. Action Network, Inc.*, 321 F.R.D. 455, 458 (D.D.C. 2017).

**3.** Rather than cleanly and clearly addressing the facts in a manner that permits adversarial testing and factfinding by the Court, CHIRLA attempts two moves to obfuscate standing.

*First*, it attempts to blur the line between its "members" and "clients" in an effort to manufacture standing. Plaintiffs' expert report states that they compared the government list against "the CHIRLA members and clients naturalized citizen list." ECF No. 43-1 ¶ 7. But associational standing does not extend to CHIRLA's "client" base. Associational standing is limited to members of a membership organization, not clients served by the organization.

[1] For Defendants' part, the Department of Homeland Security Investigations reasonably believes that the voter rolls came from the California Secretary of State's Office. *See* Dec. of Eric McLoughlin, *United States v. California*, No. 2:26-cv-12025, Dkt. 107-3 ¶¶ 6-7 & Ex. A (C.D. Cal. Oct. 26, 2026). Thus, any criticism about voter rolls is better directed at the State of California, rather than the federal government.

Attempts to assert standing on behalf of clients fall under a different rubric—third-party standing—with different requirements that Plaintiffs have never sought to satisfy and are therefore forfeited. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (recognizing that an attorney-client relationship may confer third-party standing in certain circumstances). By commingling CHIRLA's members and clients among the list of purported matches, the Court is simply left to guess whether any of the individuals actually meet the requirements for associational standing. The current record therefore does not come close to the "clear showing" Plaintiffs must make to establish standing, let alone for the heavier burden of standing for a preliminary injunction. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

*Second*, CHIRLA commingles different kinds of matches in the list it submitted in camera to the Court (but not to the government). CHIRLA's experts claim to have identified 22 CHIRLA clients or members who appear on the government's list. ECF No. 43-1, ¶ 8. The experts also claim to have a lower degree of confidence about an additional 66 CHIRLA clients or members, *id.* at ¶ 9, and pure speculation that there might be additional matches, *id.* ¶¶ 10-11. But CHIRLA did not appear to distinguish between these groups in the list it submitted to the Court (but not the government). That approach would functionally permit them to circumvent binding precedent requiring them to identify the members they actually believe have standing, by hiding them within a superset of other members who may or may not in fact have standing in their own right.

**4.** Even if the Court were to accept Plaintiffs' report at face value, it falls well short of establishing standing for Plaintiffs in this case. The Supplemental Brief and accompanying report make no attempt to salvage the standing of the lead Plaintiff, Mr. Trujillo, and add nothing to Plaintiffs' arguments concerning organizational standing, discussed below. Most of the report

also has nothing to do with whether any particular CHIRLA citizen member meets the requirements of associational standing. The report's political grandstanding about alleged inaccuracies that purportedly impact California voters generally, or comparisons between the government's list and the full "California voter file," has no relevance to whether the particular plaintiffs in this case have standing, as described more fully in Defendant's contemporaneously filed Motion to Strike. Only citizen members of CHIRLA with an individual nexus to the alleged harms can establish the elements of associational standing. Plaintiffs are in possession of both their citizen "member and client" list and the government's list that they challenge in this lawsuit, and yet they have nevertheless failed to bring forward sufficient proof to meet the preliminary injunction standard.

**5.** Beyond all those issues, and even if the Court were to assume that some number of CHIRLA's current U.S. citizen members are on the government's list, the principal problem with every alleged basis of standing for Plaintiffs' emergency motion and indeed this entire case remains.

*First,* as Defendants have explained, the letters sent to California state and county officials are not self-executing; they do not compel anyone to do anything. Although they do so at their own legal peril, the fact remains that states and counties may disregard the government's demands in these letters. As demonstrated by the *California* litigation, Defendants would need to seek an order from an Article III court to compel California or its counties to take the actions requested in the letters, should they refuse to comply with Defendants' demands. To date, in the *California* litigation, the district court and the Ninth Circuit have denied the government's motions to compel California and Los Angeles County to comply with the request to segregate the ballots of the non-citizens on the list. *See United States v. California*, No. 26-7231, 2026 WL

3268272 (9th Cir. Oct. 30, 2026) (denying motion for injunction pending appeal). And for its part, California and Los Angeles County have repeatedly refused to comply with the government's demands and have done so in a very public way that should leave no doubt in any reasonable voter's mind that California and Los Angeles County will not be taking voluntary action in response to the government's demand letters. Under these circumstances, Plaintiffs cannot establish an "actual or imminent injury" that is "certainly impending and immediate." *Food & Water Watch,* 808 F.3d at 914.

*Second*, for Plaintiffs' members to actually face an impediment to their ability to vote, they would: (1) need to in fact be named on DOJ's list as ineligible, (2) that identification would need to be incorrect, (3) the county or California would need to fail to accurately confirm that Plaintiffs' members were actually eligible to vote; (4) the relevant county or California would need to segregate the suspected (but incorrectly flagged) ineligible ballot, (5) and after segregation, the ballot would need to ultimately be (incorrectly) uncounted in the election. That is all aside from the possible intervention of an Article III court.

That speculative chain is a quintessential example of a "'highly attenuated chain of possibilities' predicated on 'guesswork as to how independent decisionmakers will exercise their judgment'" which cannot satisfy Article III standing. *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 413); *see also Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562) ("Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the courts.'").

For those reasons, Plaintiffs miss the mark by relying on *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014). That case involved a challenge to the state agency that had control over the voter roll, thus the decision by that agency to "remove the names of ineligible voters

from the State's voter rolls" created an injury sufficient to confer standing to those individuals who were actually removed from the roll. Nothing remotely similar is happening here, as the government does not exercise control over California's voter roll and it has sought only to temporarily segregate ballots, not remove any names from voter rolls. *See* Defs.' TRO Opp. at 11. None of the information Plaintiffs submit in their supplement cures this fatal defect in alleged standing.

*Third*, Plaintiffs' attempt to muddy the waters by alleging that other California counties may act independently to effectuate the challenged DOJ requests similarly fails to carry their standing burden. Plaintiffs' report claims that there are "CHIRLA citizen members and clients on the DHS ineligible list in counties that have given public quotes that are actively opening and checking the DHS lists[,]" ECF No. 43-1 ¶ 13. As explained in detail above, Plaintiffs still have not actually identified, at least to Defendants, any such citizen members, and even if they had, they have not alleged that those individuals actually fear any concrete or specific voting-related harm. There is no factual evidence the Court can rely on to conclude that there are (1) identified citizen members who are (2) on the challenged list, who (3) are in counties actually pursuing actions Plaintiffs allege cause their members harm, and (4) have expressed that they individually experienced the alleged harms.

Plaintiffs' only support for the claim that any counties are pursuing any action related to the challenged list is a single news article that quotes the Santa Cruz County Clerk saying, in response to receiving a letter from DOJ, that she's "looking at it and doing my due diligence." *See* ECF No. 43-1 ¶ 13 n.1 ("From what I've been able to gather, most counties if not all of the counties are doing what I'm doing: Sat down with our counsel, went over everything[.]"). This vague quote is hardly evidence that California counties are segregating ballots or taking any

action that would arguably infringe on CHIRLA's *citizen* members' ability to vote. Plaintiffs' only "evidence" that any members might suffer harm from this vague assertion is the unsupported statement that "[t]wo of these completed matches reside in Santa Cruz County." Pls.' Supp. Standing Br. at 2 n.2. Assuming that is even true, that is information Defendants cannot test because Plaintiffs have improperly withheld their list of matches. Regardless, it still does not demonstrate that those individuals allege that they have personally suffered any harm.

Additionally, even if CHIRLA had alleged and supported the necessary facts as to other California counties, the relief it seeks in this case would not stop any counties from doing anything. This Court cannot unsend letters and lists that have already been delivered, nor can it enjoin state or county election officials from taking their own independent action to address non-citizens ballots. In light of that reality, Plaintiffs clarified at the preliminary injunction hearing on October 30 that the only relief they now seek is an injunction prohibiting Defendants from sending *more* lists to California officials and demand letters telling them to take action based on the lists. But that relief would not redress any alleged harm that might come from Santa Cruz county's review of the lists it has already received. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that plaintiffs must establish that their injury is "likely" to be redressed by a favorable decision).

**6.** Finally, CHIRLA's supplemental brief provides no additional support for its organizational standing theory. As Defendants explained in their opposition brief, CHIRLA's organizational standing argument is based on allegations of diverted resources and harm to their mission, which is expressly foreclosed by *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024). The additional voting rights activities CHIRLA alleges it has recently undertaken are entirely consistent with the mission of the organization, and consistent with activities it already

undertakes. "[A]n organization may not establish standing simply by spending money "opposing those policies" that it "dislike[s]." *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 190 F.4th 990, 1001 (D.C. Cir. 2026).

Standing also cannot be predicated on the fact that a new government action requires an organization like CHIRLA to set aside time to understand the new action, to adjust its resources in response, and to increase or modify the degree of support it provides for clients or members who may be adversely affected. "[T]hat theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Alliance for Hippocratic Med.*, 602 U.S. 394-95.

Nothing about the alleged inclusion of some unnamed CHIRLA members-or-clients on the government's list alters this analysis. CHIRLA's supplemental brief presents no new evidence of organizational injury, much less any additional costs the organization has incurred since the submission of their expert report. Whether their members are included in the list or not, CHIRLA's voluntary decision to spend money and devote personnel to support its voting rights advocacy efforts is not a cognizable Article III injury.

Dated: November 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

/s/ *Ty Turley Trejo*
TY TURLEY TREJO (DC Bar No. 90021747)
Counsel
United States Department of Justice Civil Division
950 Pennsylvania Ave NW
Washington, DC 20530
Tel: (202) 532-0100
Ty.Trejo@usdoj.gov

*Counsel for Defendants*