**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS and PEDRO TRUJILLO,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as the Secretary of Homeland Security; and TODD BLANCHE, in his official capacity as the Attorney General,

*Defendants*.

Case No. 1:26-cv-03072-JEB

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL MEMORANDUM AND SHOW CAUSE WHY PLAINTIFFS DID NOT VIOLATE THE COURT'S ORDER**

The Court should deny Defendants' Motion to Strike Supplemental Memorandum and Show Cause Why Plaintiffs Did Not Violate the Court's Order (ECF 45) because a Rule 12(f) applies only to pleadings and Plaintiffs' counsel and their experts did not violate this Court's October 30, 2026 Order.

## BACKGROUND

### The October 30 Court Order

After the late afternoon Court telephone conference on October 30, the Court entered this order:

> MINUTE ORDER: As discussed in a further telephone conference with the parties, the Court ORDERS that: 1) The list may not be disseminated outside of Plaintiffs' legal team, which comprises counsel of record, their legal assistant, their expert, and his data assistant; 2) Absent further Order of the Court, Plaintiffs shall neither

> disclose names on the list to anyone nor inform any person that his or her name is on the list; 3) Any public filings shall redact the name(s) and identifying information of anyone on the list; 4) For now, Plaintiffs shall use this information in relation to their standing arguments only; and 5) The [41] Motion to Stay is withdrawn. So ORDERED by Chief Judge James E. Boasberg on October 30, 2026.

**Plaintiffs' Expert Analysis**

After the Court hearing, and after waiting on the sidewalk for nearly an hour, at approximately 6:03pm, Ms. Waknin and Dr. Barreto received a thumbdrive and a paper with two passwords from Mr. Trejo in front of an entrance to the Department of Justice Building at 950 Pennsylvania Avenue. While they were traveling to the hotel, that Plaintiffs' legal team was staying at, UCLA Voting Rights Project staff went to Best Buy to purchase a new windows-based laptop to use to access the file. This is the receipt:




After the new laptop and the drive were at the hotel, Dr. Barreto set up the new laptop which required that it be connected to wifi so that Windows could update. Once the laptop was functioning, wifi was turned off, and then Dr. Barreto inserted the DOJ drive, imputed the password and copied the file over to the new laptop. This is the photo taken during that process that shows the file name of the single file that was on the DOJ drive:




Dr. Barreto opened the file from the new laptop drive to ensure that the copy function was performed without error. Upon opening the file, a file-specific password was required, which was entered. The file opened. Dr. Barreto confirmed the approximate number of columns and rows and then closed the file. He then copied the file from the new laptop to his personal thumb drive and then deleted the file on the new laptop. Dr. Barreto, using his computer, then saved the file to a folder jointly owned by him and senior data scientist at UCLA, Michael Rios, MPP. The file was deleted from Dr. Barreto's personal thumb drive. Dr. Barreto retained possession of the new laptop after deleting the file from it.

Mr. Dunn and Ms. Waknin witnessed the above events but took no image, note or memory of any bit of data in the file.

At that point, Dr. Barreto and Mr. Rios took the steps to load the data into the widely used data analysis software program called "R." Dr. Barreto and Mr. Rios worked over several hours, until early morning of October 31, 2026 to perform their analysis. Once the analysis was performed

and the tables attached to their report were output to .pdf, no more access to the file was made. The file was deleted from the shared folder as shown here (with emphasis added):




The only remaining copy of the file is on the thumb drive provided by DOJ. Mr. Dunn has stored the DOJ drive, with the password paper provided therewith, in a locked and mounted safe shown here:




The only people to access and observe the names and/or identifying information on the drive was Dr. Barreto and Mr. Rios. Mr. Dunn and Ms. Waknin briefly glanced at the unredacted output CHIRLA-to-DHS match tables to confirm there was indeed data and to confirm there were identical matched entries from the CHIRLA list on the DHS list, but made no image, record, note or memory of any information thereon.

Taking seriously the order by the court to keep the data private and redact identifying information, Dr. Barreto redacted the output tables and provided them to Mr. Dunn and Ms. Waknin who again confirmed the redaction and then re-printed the tables to .pdf to be doubly certain that no personally identifying information was able to be copied and pasted from the redacted tables.

The report with redacted tables were filed with the Court in the format that DOJ personnel (Nicolas Bartell) filed such reports and tables in the Central District of California case. That report

was specifically reviewed in preparation of this filing and that report was attached to Dr. Barreto's October 31 Report. The report with redacted tables and accompanying pleading were provided to Legal Assistant Alysa Guzman for filing. Plaintiffs' counsel Carl Bergquist reviewed a draft of the pleading and the accompanying report and redacted tables. He never reviewed the file or any identifying data.

No person not specifically listed by counsel at the Friday hearing accessed, observed the file entries or were provided names or identifying data from the file. In fact, only Dr. Barreto and Mr. Rios reviewed in any detail, the contents of the DOJ file. The only other people who looked at some contents of the file were Mr. Dunn and Ms. Waknin and again they have no memory of any names or identifying information they saw and did not keep any record of what they saw.

No entry on the DOJ list has been contacted, directly or indirectly. The request for a declaration is unwarranted.

## ARGUMENT

### I. Expert declarations and briefs cannot be struck under Rule 12(f).

Defendants' motion to strike portions of an expert declaration and brief under Rule 12(f) should be denied because Rule 12(f) applies only to "pleadings." *See* Fed. R. Civ. P. 12(f) ("The court may strike from a *pleading* . . . ." (emphasis added)); Fed. R. Civ. P. 7 (defining "pleadings" as complaint and answer); *Burford v. Yellen*, 246 F. Supp. 3d 161, 182 (D.D.C. 2017) ("[F]ederal courts in this District have ruled that Rule 12(f) does not apply to . . . motions. 'Motions, affidavits, briefs and other documents are outside of the pleadings and are not subject to being stricken.'" (quoting *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52-53 (D.C.C. 2013) (cleaned up)).

Defendants' motion to strike is not permitted under the Federal Rules and should be denied.

## II. Plaintiffs should not be ordered to show cause because they complied with the Court's Order.

Plaintiffs should not be ordered to show cause because they did not violate the Court's order. Indeed, Plaintiffs complied with all four requirements of the Order.

***Requirement Number 1.*** Plaintiffs did not violate: "1) The list may not be disseminated outside of Plaintiffs' legal team, which comprises counsel of record, their legal assistant, their expert, and his data assistant[.]" The list was not more widely disseminated than permitted under the Order. And, in fact, the only people who accessed the file was Plaintiffs' "expert" Dr. Barreto "and his data assistant" Michael Rios, MPP—two people the Order specifically contemplated would access the list.

***Requirement Number 2.*** Plaintiffs did not violate: "2) Absent further Order of the Court, Plaintiffs shall neither disclose names on the list to anyone nor inform any person that his or her name is on the list[.]" Neither Plaintiffs, their legal team, nor their experts have disclosed names on the list to anyone nor have they informed any person that his or her name is on the list. Indeed, neither the DOJ list nor the unredacted tables accompanying Dr. Barreto's report have been provided to Plaintiffs.

***Requirement Number 3.*** Plaintiffs did not violate: "3) Any public filings shall redact the name(s) and identifying information of anyone on the list[.]" The public filing redacted "the name(s) and identifying information of [everyone] on the list." In fact, after Dr. Barreto provided the redacted tables to counsel, Mr. Dunn, Ms. Waknin and Ms. Guzman each tried to copy and paste, re-save, highlight and perform other commands on the redacted tables to try to protect against some inadvertent disclosure of identifying information behind the redactions.

Defendants have shown no disclosure of identifying information. Plaintiffs' counsel at the Court telephone conference explained that it was the plan to file the report publicly. Recognizing

this, the Court required that "any public filing shall redact the name(s) of identifying information of anyone on the list." There was no requirement in the Order that a filing containing no personal identifying information be made exclusively under seal. At no point did defense counsel make a motion for the filing to be made under seal. There was no reason for Plaintiffs' counsel to contemplate a sealed filing because the Order specifically mentions a public filing and DOJ's expert filings in the *United States v. California* case were publicly filed with redactions—like this report.

Defendants seem to object that the report was filed publicly and therefore reported on by media. ECF 45 at 3, fn. 1. But, as noted, the Order specifically contemplates a public filing. Defendants' lists and concomitant communications have heavily attracted media attention. It is no surprise the media would report on the filing, as they have nearly every event in this case.

Anyway, "[a]ccess to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *U.S. v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980) citing *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597-98 (1977). Defendants make no attempt to establish the factors required to justify a sealed filing and certainly did not do so on October 30 before or after the Court entered its Order. "[T]here is a "strong presumption in favor of public access to judicial proceedings, including judicial records." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). "The "Hubbard test" is our "lodestar for evaluating motions to seal or unseal judicial records." *Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1066 (D.C. Cir. 2023) quoting *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). The *Hubbard* test analyzes these factors: 1) The need for public access to the documents at issue, 2) the extent of previous public access to the documents, 3) the fact that

someone has objected to disclosure, and who that person is, 4) the strength of any property and privacy interests asserted, 5) the possibility of prejudice to those opposing disclosure, and 6) the purposes for which the documents were introduced during the judicial proceedings. Defendants' motion makes no attempt to show how this filing would have been justifiably sealed under these factors.

While complaining about the public filing, Defendants seem to complain that the actual names and identifying information were not disclosed to them, or that the information was somehow disclosed to the Court. But, in part 2) of the Order, the Court requires that Plaintiffs "shall [not] disclose names on the list to anyone." Plaintiffs understood "anyone" to mean *anyone* and therefore did not make a sealed or *ex parte* filing. In addition to the plain language in the Order, Plaintiffs have good reason to be weary of producing to the Government their membership identifying information. *See e.g., NAACP v. Alabama*, 357 U.S. 449 (1958).

***Requirement Number 4.*** Plaintiffs did not violate "4) For now, Plaintiffs shall use this information in relation to their standing arguments only[.]" To establish standing, Plaintiffs must show "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). As Defendants have acknowledged, ECF No. 38 at 7-8, Plaintiffs have contended that CHIRLA is injured because it likely has members who have been placed on the list of purported non-citizens, its members fear that they will be unable to confirm their citizenship if the Defendants' Policy is permitted to move forward, CHIRLA and its members must spent time, money, and effort to ensure they are not on the list and to ensure their voting rights are not impeded, and because the Government's threats and intimidation cause fear and distress and deter electoral participation. Every analysis Dr.

Barreto performed and that was reported in the filings were believed to be relevant to Plaintiffs' standing arguments.

Defendants make a number of arguments that some of the experts' analysis and conclusions do not relate to standing. Many of these arguments stem from Defendants' unnecessarily cabined view of what evidence is necessary to establish standing. Nevertheless, none of these arguments has merit.

First, Defendants complain that the report describes "numerous errors in the list." ECF 45 at 6. But the government transmitting lists to local officials under civil and criminal penalty that are full of errors does increase the chances that people, including CHIRLA members and clients, will be inadvertently targeted, subject to unwarranted threats and intimidation, and chilled in their exercise of their civil rights. That the list is erroneous is central to demonstrating the injury in fact and the harm that flows from programs and expenditures CHIRLA has had to institute since these lists were first transmitted. It also shows that the production and dissemination of a new list utilizing this methodology will likely result an in another error prone list. The shoddiness of the Government's list illustrates the harm to CHIRLA from having to check and double check that their voter members do not have their registrations cancelled, their ballots segregated, or their votes not tabulated and included in the official count. Errors in the list can lead to false matches and false identifications. Moreover, the fact that 42% of the people on the Government's list *are not even found on the public registration list* likewise demonstrates an actual and imminent injury to CHIRLA and its members—being falsely accused and investigated and, if eligible, chilled from choosing to register to vote in light of the Government's threats and intimidation. Next, Defendants complain that the analysis "opine[s] that the list is incomplete, has missing fields, contains duplications, and the like." *Id.* at 7. But again, these errors increase the chances that the wrong

people will be targeted because of these lists, including CHIRLA members. Moreover, this information also explains how the analysis was undertaken and what limitations exist; it provides context for the experts' analysis and expression of opinion.

Next, Defendants object that the report criticizes "the "author" of the Microsoft Excel file and the types of columns included." *Id.* Describing the file contents, generally without describing personally identifying information, was not prohibited by the Court's order. It is common for a court expert to describe the data received and analyzed. For one, it ensures there is no misunderstanding of the data exchanged. For another, it establishes the chain of custody.

Defendants also complain that the expert report and filing do not make legal arguments about standing. *Id.* It is not the role of a data expert to argue legal issues. And, the Plaintiffs' brief was all about standing. Plaintiffs' counsel maintains that all the observations in the expert report are relevant to the Court's standing analysis. Plaintiffs were working on an exceedingly short timeline given the ongoing harm of Defendants' complained-of activities. The filing was prepared to highlight key issues from the report and made no attempt to take each and every assertion in the expert report and argue its relation to standing. It is not uncommon, in fact it is the usual case, that the lawyers on one side contend a fact is relevant to a key issue while the lawyers on the other side maintain the opposite. The attorneys' disagreement about the law and the relevant facts to apply to that law do not amount to a willful violation of the Court's order and certainly do not justify the rhetoric and relief within the Motion to Strike.

Finally, Defendants contend (ECF at 3) that "[t]he government's law-enforcement efforts have been prejudiced by Plaintiffs' misuse of the list" because Plaintiffs' filing has "been the subject of widespread and misleading media coverage critical of the government's efforts to ensure voter integrity." *Id.* It is telling that the Government admits its "law-enforcement efforts" are fully

tethered to whether its voter intimidation campaign is accepted or rejected in the media. It is no fault of the Plaintiffs that media extensively cover these lists.

For the foregoing reasons, the Court should deny, in full, Defendants' Motion to Strike Supplemental Memorandum and Show Cause Why Plaintiffs Did Not Violate the Court's Order.

Dated: November 1, 2026

Respectfully Submitted,

/s/ Chad W. Dunn

Chad W. Dunn (DC Bar No. 987454)
Sonni Waknin*
Bernadette Reyes*
UCLA Voting Rights Project
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org

Xavier Becerra**
Senior Advisor and Voting Rights Counsel
108 W. 2nd Street, #310
Los Angeles, CA 90012
Telephone: 310-924-9310
Scheduling.becerra@gmail.com

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (D.C. Bar No. 1720816)
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone:310-279-6025
cbergquist@chirla.org

Adam Reese*
2533 West Third Street, Suite 101 Los Angeles, CA 90057
Tel: 213-353-1333
areese@chirla.org

*Licensed in the State of California, *Motion to appear pro hac vice* granted.
**Licensed in the State of California, *Motion to appear pro hac vice*, forthcoming.

## CERTIFICATE OF SERVICE

I certify that on November 1, 2026, a true and correct copy of the foregoing was filed via the CM/ECF filing system and thereby furnished to counsel of record via email in the service list below:

Andrew I Warden, Esq.
andrew.warden@usdoj.gov
Ty Trejo, Esq.
ty.trejo@usdoj.gov

*Counsel for Defendants*

*/s/ Chad W. Dunn*
Chad W. Dunn